## WILLIAM H. ORMSBY v. WARREN H. RHOADES.

*Parent and Child. Infant. Contract, Express, implied.*

1. An infant, living with his uncle, who stands *in loco parentis* to him, and there is no express contract to the contrary, and no circumstances showing a different understanding or expectation of the parties, cannot recover for his services, though worth more than his support, when the infant is in need of the support and the uncle faithfully discharges the duties of his parental relation to him. TAFT, J., dissents.

2. Where the parental relation exists between parties, there is no implication of a promise to pay for wages or support.

GENERAL ASSUMPSIT. Heard on a referee's report, September Term, 1886, WALKER, J., presiding. Judgment, that the plaintiff could recover only upon his claim, item No. 2, $16.20, damages, and costs be apportioned; and that he could not recover for his services, found by the referee to be worth $200 over and above what the defendant furnished him, and interest from April 24, 1881. Exceptions by the plaintiff.

The referee found that the plaintiff's father was a brother of the defendant's wife; that the plaintiff was born in 1862, and both his parents deceased in 1870 at Troy, N. Y.; that in the fore part of October of that year the defendant and his wife found the boy, the plaintiff, at the Troy Orphan Asylum, where he had been taken a short time before by his

Sunday school teacher, and on October 17, 1870, the defendant and his wife took the boy to their home in Windham, where he continued to live with the defendant until April 24, 1881, when the plaintiff ran away. By some arrangement (it did not appear what) with the poor-master of the city of Troy, the plaintiff was surrendered by an official of said asylum into the defendant's custody when he was first taken to his home in 1870. While the plaintiff lived with the defendant he had been made to believe that the latter was lawfully entitled to his earnings until he should become of age, and laboring under that belief, he was induced to purchase his time of the defendant, during his minority, after he left him. Item No. 2, $16.20, for which judgment was rendered below, was a charge for money paid to defendant under this purchase of his time. The referee found, in part :

" I do not find that the plaintiff was ever bound out or apprenticed to the defendant, or that the plaintiff was ever adopted by the said defendant, or by the said defendant and his wife, as his or their child. Neither am I able to find that there ever was any contract or agreement made and entered into by and between defendant and plaintiff, or between the defendant and any other person authorized to act for the plaintiff, in reference to plaintiff's term or manner of service, or the amount of compensation he was to receive, if any. But I do find that the plaintiff was taken by the defendant into his family, was received and treated therein as a member thereof, and so continued to be recognized and treated by the defendant and his wife so long as he remained with them. The defendant clothed the plaintiff while he remained with him—not extravagantly, but quite comfortably, and as well as farmers' boys in our hill towns will average to be clothed. No charge or account of clothing furnished was ever made by the defendant to plaintiff. The boy was sent to church, was required to attend Sunday school, and also attended the common school in the school district in which defendant resided. He was not kept constantly at school during each term, but was allowed and sometimes required to remain at home and away from school to assist about the work upon the farm. During the last few years plaintiff was with the defendant he was only

Ormsby *v.* Rhoades.

allowed to attend school during the winter term, as his services at home upon the farm had become of some value to the defendant during the spring, summer and fall months. I state this fact, inasmuch as it has a bearing upon the question of the value of the services of the plaintiff done and performed for the defendant during these years. Neither was he allowed to attend the winter terms steadily, as he was required to remain at home occasionally and do work upon the farm. His opportunities for attending school, as allowed by the defendant, were just about the same as were afforded to farmers' boys, living upon hill farms, thirty to fifty years ago. Upon the trial some evidence was given tending to show abusive treatment of the plaintiff by the defendant. I find that the plaintiff was like the great majority of boys, and required correction. On two or three occasions the defendant inflicted corporal punishment upon him, but not to injure him in any way; and I find that both the defendant and his wife thought a great deal of the boy, and only punished him for his good. The plaintiff testified that he ran away because he was not well treated. I do not find that he was justified in leaving the defendant on any such ground as that assigned."

The referee also found, subject to the opinion of the court on the facts reported, that the plaintiff's services were worth $200 more than that which the defendant furnished him; and that he was entitled to recover that amount with interest, if anything, for his work and labor for the defendant.

*A. E. Cudworth* and *Waterman & Martin*, for the plaintiff.

To sustain the claim that the defendant stood *in loco parentis*, the defendant must have been bound to support and educate the plaintiff during minority. 1 Bl. Com. 447; 2 Kent Com. 193.

The fact that the defendant took the plaintiff, without authority, into his family, of his own motion, could not force this artificial family relation upon the infant plaintiff so as to permit the defendant's pocketing over $200 earned by the plaintiff's toil.

This case dos not come at all within the rule as laid down in *Fitch* v. *Peckham*, 16 Vt. 150; *Andrus* v. *Foster*, 17 Vt. 556;

*Davis* v. *Goodenow*, 27 Vt. 715 ; *Sprague* v. *Waldo*, 38 Vt. 139 ; *Lunay* v. *Vantyne*, 40 Vt. 501.

When one labors for another with his knowledge and approval the law will imply that the relation of debtor and creditor exists, except in cases where the parties at some time previous to the rendition of the services for which payment is demanded, have stood in such a relation to each other that rendering such services by the plaintiff did not make the defendant his debtor.

And neither relation by blood, nor the family relation alone, are sufficient to rebut the presumption that such services must be remunerated. *Briggs* v. *Briggs*, 46 Vt. 571.

The law will not raise an implied promise against one incapable of making a valid promise. *Southworth* v. *Kimball*, 58 Vt. 337.

The relation of the plaintiff to defendant must have come under one of these three conditions : He was a servant, or a boarder, or he was a visitor, neither bound to pay nor entitled to receive compensation. *Andrus* v. *Foster, supra; Guild* v. *Guild*, 15 Pick. 129.

" When the relation is that of a visitor no expectation of pay for board or incidental services exists. If either of the other relations is established an expectation of pay arises." *Sprague* v. *Hebard*, 58 Vt. 375.

*L. S. Walker* and *C. B. Eddy*, for the defendant.

The defendant stood *in loco parentis* to the plaintiff ; and in such case, the law implies no obligation to pay for plaintiff's services. *Andrus* v. *Foster*, 17 Vt. 556 ; *Davis* v. *Goodenow*, 27 Vt. 715 ; *Lunay* v. *Vantyne*, 40 Vt. 501 ; *Fitch* v. *Peckham's Est.* 16 Vt. 150. When individuals stand to each other in a family relation, as distinguished from that of master and servant, the law implies no contract for wages. *Lantz* v. *Trey*, 19 Penn. 366 ; *Mulhern* v. *McDavit*, 16 Gray, 404. The policy of the law is to encourage an extension of the circle and influence of the domestic fireside, and its presumptions are

in favor of the existence of its relation, unless a different arrangement is proved to have been made. *Williams* v. *Hutchinson*, 3 N. Y. 312; *Williams* v. *Williams*, 132 Mass. 304. The arrangement between these parties was highly beneficial to the plaintiff. He was in no way defrauded or overreached. If it was a contract, it was for necessaries, and therefore binding. "A contract for subsistence, clothing and education, is a contract for necessaries, and if reasonable and beneficial, will be supported by law." SHAW, Ch. J., in *Stone* v. *Dennison*, 13 Pick. 6.

The opinion of the court was delivered by

ROWELL, J. The plaintiff's claim, shortly stated, is this; that in order to entitle the defendant to be treated as having stood *in loco parentis* to him, he must have had the legal custody of his person, and have been bound to support, protect, and educate him during the time in question, which he did not have and was not bound to do; that the defendant took him from the asylum into his family of his own motion, without authority, and could not force a *quasi* family relation upon him, being an infant, so as to now shield himself from paying what his services were worth above what he received by way of support at his hands; that defendant can stand, therefore, only upon the ground of an agreement, express or implied; that no express agreement appears, and that, as plaintiff was incapable by reason of infancy of contracting, the law will not imply an agreement against him, as it will not imply a promise against one incapable of making a valid one; that he was clearly not a visitor in defendant's family, but was either a boarder or a servant there, and that, whichever he was, he is entitled to recover.

But it is not true that in order to entitle the defendant to be treated as having stood *in loco parentis* to the plaintiff he must at the time have had the legal custody of his person, and have been bound to support, protect, and educate him; and Blackstone and Kent, cited to that proposition, do not sustain it,

and the cases are the other way. Thus, in the absence of any statutory provision imposing the obligation, a step-father is not bound to maintain his step-children, and, consequently, is not entitled to their earnings, nor the control of their persons.— *Tubb* v. *Harrison*, 4 T. R. 118; *Cooper* v. *Martin*, 4 East, 76; *Freto* v. *Brown*, 4 Mass. 675; *Bartley* v. *Richtmyer*, 4 N. Y. 38; 2 Kent Com. *192—but yet he may stand in a parental relation to them; and if he takes them into his house, and they become a part of his family, he will be deemed to stand in such relation, and to be entitled and responsible accordingly as long as that relation exists. *Stone* v. *Carr*, 3 Esp. 1; Lord ELLENBOROUGH in *Cooper* v. *Martin*, 4 East, 76, 82; 2 Kent Com. *192. But when they cease to be members of his family, as they may at will, then whatever custody and control he had of them is gone, and his rights and liabilities on account of his former relation to them cease; and they cannot recover of him for services rendered while that relation existed, though minors at the time, and though their services be worth more than their support, unless there was an express agreement to that effect, or something to show that such was the understanding or expectation of the parties; for in such circumstances a promise to pay wages will not be implied— *Williams* v. *Hutchinson*, 3 N. Y. 312—the relation rebuts such an implication.

In *Manvell* v. *Thomson*, 2 C. & P. 303, an uncle who had brought up a niece, but of whom the case does not show he had legal custody, was held to stand *in loco parentis* to her; and, on showing the smallest degree of service, was allowed to recover damages for her seduction, the same as a father.

And in *Irwin* v. *Dearman*, 11 East, 23, the plaintiff, who had taken into his family and bred up for several years the daughter of a deceased friend, was allowed to recover damages for her seduction *ultra* the mere loss of service; on the ground that he stood *in loco parentis* to her.

So in *Haggerty* v. *McCanna*, 25 N. J. Eq. 48, a step-father, having voluntarily assumed the care and support of his step-

Ormsby *v.* Rhoades.

daughter, was not allowed compensation for her support because he stood *in loco parentis* to her.

It is further contended that because the plaintiff was an infant, therefore the defendant could not stand in the relation of a parent to him, and thereby subject him to the legal consequences of that relation, because he could not have bound himself in the premises by an express contract with the defendant, and hence cannot be deemed to have assented by implication to that relation and its consequences. But this is not so; for an infant can bind himself by an express contract for necessaries, and if by an express contract, then by an implied contract as well; and surely food and shelter, care and nurture, in the defendant's home, were necessaries for the plaintiff in his circumstances. Thus, in *Stone* v. *Dennison*, 13 Pick. 6, an infant contracted specially to serve the defendant till of age for his board, clothes and education; and it was held that he could not repudiate the contract and recover for his services because they were shown to be worth more than the stipulated compensation. The case was put upon the ground that the contract was for necessaries.

In *Williams* v. *Hutchinson*, 3 N. Y. 310, the assent of an infant to an arrangement to waive the right to claim wages for his services was implied from the parental relation the defendant sustained to him when they were rendered.

We take it to be sound law, that whenever one stands in the relation of a parent to an infant who needs his care and support, and faithfully discharges the duties of that relation, there being no express contract to the contrary, nor any circumstances showing a different understanding or expectation of the parties, there can be no recovery for services on the one hand, nor for care and support on the other, though one happens to be worth more than the other.

This case comes clearly within this principle, and therefore the plaintiff cannot recover.

Judgment affirmed.

Ormsby *v.* Rhoades.

Dissenting opinion by

TAFT, J.   I do not agree with my brethren in the disposition of this case.   The plaintiff, when eight years of age, was taken by the defendant and kept as a member of his family until he was nineteen years old, when he voluntarily left the defendant.   The latter stood to the plaintiff *in loco parentis.* No contract was ever made by the parties.   Will the law imply one?   I think so.   The care, support and education furnished the plaintiff were certainly necessities for which he might expressly contract, or for which he might be bound by an implied promise.   But while the law implies a promise on the part of the infant to pay for all that the necessaries furnished are worth, will it, in this case, imply one to pay two hundred dollars in addition?   I think not.   An infant is not bound by any contract as to the price of necessaries for which he may be liable.   Kent, the learned commentator, says (2nd vol., 240) :

" In all cases of contracts for necessaries the real consideration may be inquired into.  The infant is not bound to pay for the articles furnished more than they were really worth to him as articles of necessity, and, consequently, he may not be bound to the extent of his contract ; nor can he be precluded by the form of the contract from inquiring into the real value of the necessaries furnished."

The contract is a personal one, voidable by the infant or his representative only.   2 Kent Com. 237.   A party dealing with an infant is bound by the terms of the contract, and where the relation of parent and child in fact exists, a stranger cannot object that the one standing *in loco parentis* has not the *legal custody* of the infant.   Such are the cases cited from 2 C. & P. 303, and 11 East, 23.   And in *Keane* v. *Boycott*, 2 H. Bl. 511, the court refer to the correct principle when it says : " For this is the case of a stranger and a wrong-doer interfering between the master and servant, and now seeking to take advantage of the infant's privilege of avoiding his contracts, a privilege which is personal to the infant, and which no one can exercise for him."

The case cited in the opinion of the court of *Stone* v. *Dennison,* 13 Pick. 6, was a cause in which the contract was made or assented to by the guardian of the infant, and was therefore valid; and *Haggerty* v. *McCanna,* 25 N. J. Eq. 48, was a case where the one standing in place of the parent attempted to recover compensation for the support of the infant. The plaintiff in that action could not repudiate the relation after having sustained it; he might not have been compelled to sustain it; but having done so he could not avoid it; the infant alone could do that.

In the case of *The King* v. *Wigston,* 3 B. & C. 487, it was held that an infant apprentice could not dissolve the relation of master and apprentice; but in England there are many statutes relating to apprenticeships, and I apprehend that that case was ruled under one of them, for in an early case at common law, *Gylbert* v. *Fletcher,* Cro. Car. 179, where an action was brought against an apprentice for departing from his service without license, within the time of his apprenticeship, it was pleaded that at the time of making the indenture he was within age, whereupon it was demurred. After argument, it was by "*All the court* resolved that although an infant may voluntarily bind himself apprentice, and if he continue apprentice for seven years, may have the benefit to use his trade, yet neither at the common law, nor by any words of 5 Eliz., c. 4, shall the covenant or obligation of an infant for his apprenticeship bind him. But if he misbehave himself the master may correct him in his service, or complain to a justice of peace to have him punished according to the statute. But no remedy lieth against an infant upon such covenant, and therefore it was adjudged for the defendant."

At all events, I think the latter case the better law. I see no more reason for holding that an infant may bind himself as to the price he shall pay for his bringing up than I do in holding that he may bind himself as to the price of specific articles of necessity, which, confessedly, he cannot do. No injustice to the *quasi* parent is done by the rule I contend for; he is

fully compensated for all that he expends for the infant, and if he wishes to make his contract a legal one, binding upon the infant, let him deal with the latter's guardian, and if there is none, let him see that one is appointed, which can be done in all cases of infants.

How does the case at bar differ in principle from those of contracts by infants, to serve for a certain term, who quit before the term of service is performed?

In such cases it has always been held that the infant may recover what, under all the circumstances, his services were worth, taking into consideration any injury the other party may have sustained by the avoiding the contract. Rob. Dig. 390, s. 21. By this rule I think the plaintiff may recover the whole sum reported.