## Rosemary Borkman, aka, Rosemary McAlister v. Commissioner of Social Welfare of the State of Vermont and the Vermont Board of Social Welfare

[268 A.2d 790]

No. 59-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 2, 1970

On Motion for Reargument August 12, 1970

*Richard C. Blum* and *John A. Dooley, III*, Burlington, for Plaintiff.

*James M. Jeffords*, Attorney General, and *William S. Roby, III*, Assistant Attorney General, for the State.

**Smith, J.** The appellant, then Rosemary Borkman, had been receiving certain benefits from the Vermont Board of Social Welfare, in the nature of assistance in the maintenance and support of herself and child. On January 1, 1969, the petitioner married one Robert McAlister, then eighteen years of age. On February 1, 1969, the benefits which had been paid to Rosemary and her child were terminated by order of John J. Wackerman, then Commissioner of Social Welfare of the State of Vermont. The Commissioner of Social Welfare, by virtue of 33 V.S.A. Sec. 2504(c)(1) and (2) is granted authority to fix standards and regulations necessary to administer the laws assigned to his department. Pursuant to such authority, the Commissioner had issued the following regulation:

> "If the grantee relative with whom the child is living is a parent, eligibility ceases upon remarriage of the parent, since the child is no longer deprived of parental support . . . ." Family Service Manual, Sec. 23314.

Upon ascertaining that Rosemary had married Mr. McAlister, the Commissioner terminated the benefits she had been receiving, based upon the section of the Family Service Manual just quoted.

On February 26, 1969, the appellant was given a Fair Hearing by the Vermont Board of Social Welfare, which hearing terminated on March 14, 1969. Findings of Fact were made by

the Board, and the order of the Board, filed March 27, 1969, affirmed the order of the Commissioner that she was no longer eligible to receive ANFC.

The term ANFC is the Vermont designation of the aid furnished to those entitled to aid under the federal program entitled "Aid to Needy Families with Dependent Children", in which program Vermont has chosen to participate. In other states such aid is designated under the initials AFDC.

The appellant, now Rosemary McAlister, has briefed two principal points for our determination here. She alleges that her ANFC benefits were wrongfully terminated, in that the Order of the Commissioner, affirmed by the Board, is contrary to the laws, rules and regulations of the federal act which furnishes such aid, and that the section of the Family Service Manual upon which the Commissioner acted, is contrary to the intent of the federal act. In the event that this Court finds that the action of the Board of Social Welfare should be sustained, she alleges that she was wrongfully deprived of the benefits she had been receiving between the time of the issuance of the Order of the Commissioner and the Order of the Board of Social Welfare, following the Fair Hearing, and issuance of the Findings of Fact.

The State argues that the record on appeal is insufficient to present the question of whether the Board erred in its decision that the termination of benefits was warranted on the grounds that the infant-recipient was no longer deprived of parental support. The objection on the part of the State seems to be that the appellant has failed to prove the existence of the relationship of stepfather and stepchild between Mr. McAlister and the child of Rosemary.

■ But the burden of proof of establishing this relationship was on the State, and it was the determination of the Commissioner that such relationship did exist between the child and Mr. McAlister that brought about the termination of the benefits to Rosemary and the child. The Findings of Fact made by the Board state that the appellant had been the recipient of benefits paid by the State of Vermont for herself and her infant child, and that she recently married McAlister.

The Findings further state that the Commissioner knew of the marriage and relied on that fact in making his decision to

terminate the benefits. The Commissioner, in his findings, further states:

> "The marriage of a recipient of welfare benefits terminates her right to receive such benefits for her child, because the child is no longer deprived of parental support."

Not only is the record, as described above, sufficient for us to hear the appeal but it also makes clear the principal issue involved here.

██ The issue presented is whether the Order of the Commissioner, affirmed by the Board, and based upon the provision in the Family Service Manual, is in conflict with the rights of the appellant for aid under the federal law. Vermont, having chosen to participate in the Federal program entitled "Aid to Needy Families with Dependent Children" must necessarily conform to the federal laws, statutes and regulations controlling such welfare program. *King* v. *Smith,* 392 U.S. 309, 20 L.Ed. 1118, 1126.

The Vermont Social Welfare Department, by its regulation, has ruled that benefits received by a parent with whom the child is living automatically ceased upon such marriage of the parent, because the relationship then established of stepfather and stepchild, furnishes such child parental support. More simply stated, the stepfather is considered to be responsible for the support of the stepchild.

██ *King* v. *Smith, supra,* made clear that Congress, in the passage of the ANFC program, in the use of the word "parent" meant an individual who owed to the child a state-imposed legal duty of support. In the very recent United States Supreme Court case of *Genever Lewis et al., appellants* v. *Robert Martin, Director of the State Department of Social Welfare of the State of California, et al.,* 397 U.S. 552, 90 S.Ct. 1282, the Court had under consideration a regulation of the Health, Education and Welfare Department (HEW). Such regulation provided in pertinent part:

> "(a)  A state plan for aid and services to needy families with children . . . must provide that the determination of whether a child has been deprived of parental support

or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent . . . will be made only in relation to the child's natural or adoptive parent, or in relation to a child's step-parent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires step-parents to support stepchildren to the same extent that natural or adoptive parents are required to support their children."

The opinion of the majority, written by Mr. Justice Douglas, stated:

"In the absence of proof of actual contribution California may not consider the child's 'resources' to include . . . the income of a non-adopting stepfather who is not legally obligated to support the child as is a natural parent . . . ."

There are no findings of fact before us to establish that the stepfather, in this instance, Mr. McAlister, has adopted the child of Rosemary, or that he has in any way contributed to her support. Our inquiry must then be directed to the question of whether under Vermont Statutes a stepfather is legally obligated to support a stepchild, or the Order of the Commissioner cannot be supported by the findings of fact.

The common law rule in Vermont is that a man is not bound to support the children of his wife by a former husband. *Town of Manchester* v. *Town of Rupert*, 6 Vt. 291, 294. See also *Administrator of Pratt* v. *Baker*, 56 Vt. 68. In *Ormsby* v. *Rhodes*, 59 Vt. 505, 510, this Court affirmed the principle that in the absence of any statutory provisions imposing the obligation a "stepfather is not bound to maintain his stepchildren . . . ." The Court then did go on to point out that a parental relationship could be constituted if the stepfather took the stepchildren into his house, and they became a part of the family he would then be deemed to stand in such relationship and to be entitled and responsible accordingly as long as that relationship existed. However, the Court also held that such relationship could cease to exist at the will of the stepchildren. The findings of fact before us here do not state that

the newly acquired husband of Rosemary has taken her child into his home, or that he has made her a part of his family.

■ Under the Uniform Desertion and Nonsupport Act, 15 V.S.A. Chap. 5, Subchap. 1, the word child as used in that Act is stated to include a "stepchild" under sixteen years of age. 15 V.S.A. Sec. 202 provides that a parent without just cause who refuses to provide for the support and maintenance of "his" child may be imprisoned or fined. While the Uniform Act defines "stepchild", it affords no definition of the word "parent". This is, however, a criminal statute, and as was said in *Town of St. Johnsbury* v. *Town of Sutton,* 102 Vt. 451, 150 Atl. 133, in interpreting a similar statute of that time, while a parent who, without lawful excuse wilfully neglects to provide for the support and maintenance of his stepchild under the age of sixteen years, may be liable for prosecution, such statute does not either in express terms or by necessary implication affect his civil liability for the support of such stepchildren.

As we have just seen, there can be no doubt but that a stepfather could create a parental relationship with a stepchild so that he would be as responsible civilly for its care as if the child were his own issue, or a child which he had legally adopted. *Ormsby* v. *Rhodes, supra.* But, as we have before stated, there are no findings that such a relationship had been established by Mr. McAlister with the child of his wife that was in being before his marriage to the child's mother.

■ The findings of fact of the Commission do not sustain its order terminating the benefits received by Rosemary McAlister and her child. While such findings do show a ceremonial marriage between Rosemary and McAlister, they fail to show that McAlister is the natural or adoptive father of the child, or that he has made himself legally obligated to assume the support of the child. In *Lewis* v. *Martin, supra,* the United States Supreme Court declared:

> "Even where the man is ceremonially married to the mother but is not the real or adoptive father, his income may not be treated as available to the children unless he is legally obligated to support the child by state law."

The laws of Vermont do not impose this civil obligation upon a stepfather.

■ It must necessarily follow that the order of the Board, affirming the decision of the Commissioner of Social Welfare to terminate the benefits payable to Rosemary McAlister for the support of her child is not supported by the findings of fact, and must be reversed. Our decision is that such benefits must be continued by the Department of Social Welfare under the applicable federal law under the facts as presented. There no longer exists any necessity for us to consider the question of whether the Department should have continued the benefit payments to the appellant during the pendency of the Fair Hearing and the issuance of the Order of the Board.

*The entry is "The Order of the Board of Social Welfare is reversed, and the Commissioner of Social Welfare is ordered to resume payments to Rosemary McAlister for the benefit of her child, such payments to be resumed as of February 1, 1969."*

## On Motion For Reargument

**Per Curiam.** After the opinion in this case was handed down the appellee filed a motion for reargument. Limited reargument was granted on the question of the allocation of the burden of proof in the fair hearing procedure provided in 33 V.S.A. § 2571. This section provides that an applicant for or recipient of assistance, benefits or social services, who is aggrieved by the department's decision, may request a review by the commissioner. 33 V.S.A. § 2571(a). The commissioner's decision is reviewable by the social welfare board and the action taken by the social welfare board can be appealed to this Court. 33 V.S.A. § 2571(b), (c).

■ In the case at hand, the plaintiff has the status of a recipient of assistance. She is not an applicant. Since the department initiated the action, by terminating the plaintiff's benefits under the act, the burden of proof lies with that agency to establish legal cause for terminating the benefits to the recipient. This confirms the main opinion, wherein we held that the burden of proof in establishing the stepparent-stepchild relationship was with the administrative agency.

*Let the entry, as announced with the main opinion, be certified to the Commissioner and Board of Social Welfare.*