# In re Appeal of Sally Fowler

[288 A.2d 463]

No. 162-70

Present: Shangraw, Barney, Smith and Keyser, JJ., and Daley, Supr. J.

Opinion Filed March 3, 1972

*Richard C. Blum,* and *Joseph Goldberg,* Vermont Legal Aid, Inc., Burlington, for Plaintiff.

*James M. Jeffords,* Attorney General, and *Edward J. Cashman,* Assistant Attorney General, for Defendant.

**Daley, Supr. J.** This appeal arises from the refusal of ANFC benefits under 33 V.S.A. by the Board of Social Welfare.

The appellant is the wife of Orville Fowler, and the mother of six minor children by a previous marriage, which terminated in divorce, and one other child born to her union with Orville Fowler. In the month of May, 1970, the appellant sought ANFC benefits for the six minors by her previous marriage. None were sought for her child by Orville Fowler. Her application was denied by the St. Albans district office, Vermont Department of Social Welfare, on June 15, 1970, because her husband was at home. The decision of the district office was affirmed by the commissioner of Social Welfare, after which appellant was granted "fair hearing" before the Social Welfare Board which affirmed the refusal of ANFC benefits. The findings of fact of the Social Welfare Board were as follows:

> "Petitioner was refused ANFC for the benefit of six minor children in June, 1970, on the grounds that their stepfather was in the same home.
>
> Petitioner's husband (the stepfather) and her children do share the same home and are part of the same family.
>
> The stepfather is employed and contributes support for his stepchildren."

The questions presented to this Court by the appellant and briefed by the parties are:

> "1. Do the findings of fact support the conclusion that Mrs. Fowler's children are not entitled to ANFC benefits?
> 2. Do the findings of fact support the implicit conclusion that Mr. Fowler stands *in loco parentis* to Mrs. Fowler's children?"

The appellee contends the decision of the Social Welfare Board (hereinafter referred to as the Board) is correct because the children on whose behalf public assistance was requested were not within the meaning of "dependent child" as the same is set forth in 33 V.S.A. § 2701. The appellee further contends at the time of application the children were residing with a stepfather legally obligated to contribute support and who was in fact providing for their actual financial needs.

The term ANFC is the Vermont designation of the aid furnished to those entitled to aid under the federal program entitled "Aid to Needy Families with Dependent Children" in which Vermont has chosen to participate. The program was instituted by Congress as a part of the Social Security Act, 42 U.S.C. § 601 *et seq.* The basis for eligibility for the program is found, insofar as Vermont is concerned, at 33 V.S.A. § 2701 which is patterned in substance after the provisions of 42 U.S.C. § 606:

> "(1) Dependent child; a needy child who: . . .
>
> (C) Has been deprived of parental support or care . . . ."

The Commissioner of Social Welfare by virtue of 33 V.S.A. § 2502 (c) (2) is granted authority to "fix standards and issue regulations necessary to administer [those] laws . . . ." assigned to his department. Pursuant to his authority the commissioner issued the following regulation:

> "If the grantee relative with whom the child is living is a parent, eligibility ceases upon remarriage of the parent since the child is no longer deprived of parental support . . . ." Family Service Manual § 23314.

■■ The State of Vermont, in choosing to participate in the federal ANFC program, cannot administer its state program in conflict with federal laws, statutes or regulations controlling such welfare programs. *Borkman* v. *Commissioner of Social Welfare,* 128 Vt. 561, 268 A.2d 790 (1970), citing *King* v. *Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118, 1126 (1968). In *King* v. *Smith, supra,* 20 L.Ed.2d at 1131, the United States Supreme Court made it clear that Congress, in passing the ANFC program, intended the term "parent" to

mean only an individual who owed the child a state-imposed legal duty of support. *Borkman* v. *Commissioner of Social Welfare, supra,* 268 A.2d at 792.

The Board, in affirming the refusal of ANFC benefits, determined that the stepfather in the home was legally obligated under state law to support the children in question; therefore, they had not been denied parental support. In reaching this conclusion, the appellee argues that the Board found an *in loco parentis* relationship existing between Orville Fowler and the six minor Paquette children. In its "reasons for order" the Board stated that the Department of Social Welfare decision to refuse ANFC benefits was consistent with the regulation in the Family Service Manual § 23314, *supra,* as qualified in *Borkman* v. *Commissioner of Social Welfare, supra,* wherein this Court held that ANFC benefits could not be terminated merely because of the presence of a non-adopting stepfather in the home where the children resided because, in the absence of any statutory authority to the contrary, the common law imposes no civil duty upon a stepparent to support his stepchildren. The Court, however, pointed out that a stepparent could become legally obligated to support his stepchildren if he took them into his home and they became a part of his family, citing *Ormsby* v. *Rhoades,* 59 Vt. 505, 510, 10 A. 722 (1887).

*In loco parentis* is defined in Black's Law Dictionary 896 (4th ed. 1957): "In the place of a parent: . . . charged, factitiously, with a parent's rights, duties, and responsibilities." For such a relationship to come about as between stepparent and stepchild depends upon the intent of the stepparent "to be determined in the light of the circumstances peculiar to each case." 59 Am.Jur.2d *Parent and Child* § 91, at 189. The intention required to create an *in loco parentis* relationship "should not lightly or hastily be inferred." 67 C.J.S. *Parent and Child* § 79.

Without the factor of intent to assume parental duties by the stepparent over the stepchild, an *in loco parentis* relationship does not arise. In *Rutkowski* v. *Wasko,* 286 App.Div. 327, 143 N.Y.S.2d 1, 5 (1955) it was stated:

> "A stepfather who furnishes a bed and provides bread for a minor son of his wife by a former marriage and who exercises some control over him does not by these acts alone establish a parental relationship. . . . The relationship should be found to exist only if the facts and circumstances show that the stepparent means to take the place of the lawful father not only in providing support but also with reference to the natural father's office of educating and instructing and caring for the general welfare of the child."

This reasoning was quoted with favor by the Wisconsin Supreme Court in *McManus* v. *Hinney*, 35 Wis.2d 433, 151 N.W.2d 44, 46 (1967).

The only evidence before the court concerning his intent to enter into an *in loco parentis* relationship is found in the examination of Mr. Fowler (In response to questioning as to why he contributed support):

> "First, their natural father refuses to; secondly we have asked the state to help us, they have refused to; thereby, I can't very well sit down to a dinner table and have my youngest and only daughter in the house, my wife and myself sit there and tell six children they cannot eat."

(In response to questioning if it was his intention to treat the Paquette children as his own):

> "I don't think it is the intention of any man as a stepfather to try to take the place of a natural father when that father is still living. I pray to God so many times that their own father would try to be a father to them even though he is no longer married to their mother. That is what I try to do with my own children."

■ From the testimony of Mr. Fowler this Court cannot find an intention on his part to assume an *in loco parentis* relationship with his stepchildren. The ultimate accomplishment of parent substitution is, of course, adoption, a legal step probably not necessary to the assumption of parental responsibility for the purposes here in issue. But the presence of an intention to replace the natural parent and assume,

to his exclusion and relief, the burdens and duties of support and maintenance of the children must certainly appear. This is not accomplished by the mere provision of food, clothing and shelter on the basis of need, particularly when the intention not to look to the natural father for any performance is expressly refuted, as here.

It is true that the evidence in the cause before us demonstrates a monetary contribution on the part of the non-adopting stepfather and the physical presence of the children with him under the same roof, also the exercise of some care and guidance, as the Board has found, but a consideration of all of the evidence before the Board including the testimony, hereinbefore quoted, fails to show an intent on the part of the stepfather of making the six minor Paquette children members of his family. The intent to make the stepchildren members of the family can be clearly deduced in *Ormsby* v. *Rhoades, supra,* upon the facts found by the Referee upon which the Court based its decision. The existence of *in loco parentis* depends upon the facts and circumstances of each individual case. The relationship may exist in one and not in another. We are charged with a determination as to the existence of *in loco parentis* in this case alone. The Board finds in the evidence an implied intention on the part of the stepfather to make the stepchildren a part of his family. The evidence does not sustain this implication. Therefore, the judgment of the Board is not supported by the facts found and must be reversed.

Orville Fowler, not having stood in the legal status of *in loco parentis* at the time appellant was refused ANFC benefits, was under no civil obligation to provide support for the six minor Paquette children. Having found that the Board's decision is incorrect the appellant is eligible for ANFC assistance.

The Board made no finding relative to need on the part of the children and we cannot determine such factor so it is necessary to remand this cause to the Commissioner of Social Welfare for a determination of such benefits as the appellant may be entitled to from June 15, 1970, until January 8, 1971.

The appellant's question relative to the admissibility of certain evidence presented before the Board not having been briefed is waived. *Lowe* v. *Green Mt. Power Corp.*, 111 Vt. 112, 117–18, 11 A.2d 219 (1940).

The decision of the Board in affirming the refusal of ANFC aid to the appellant is reversed and the cause remanded to determine the amount of benefits the appellant and the six minor Paquette children are entitled to by law.

*Order reversed. Cause remanded.*