# Orleans Village v. Union Mutual Fire Insurance Company

[335 A.2d 315]

No. 81-74

Present: Barney, C.J., Smith, Daley and Larrow, JJ., and Shangraw, C.J. (Ret.)

Opinion Filed February 14, 1975

Motion for Reargument Denied March 10, 1975

*May & Davies,* Barton, for Plaintiff.

*McKee, Clewley & FitzPatrick,* Montpelier, for Defendant.

**Smith, J.** An insurer who refused to defend a village sued in negligence argues here that the resolution of an issue litigated in that action won by the injured party is not binding on the insurer when the village later sues the insurer for breach of contract. That issue is whether the village had waived its

sovereign immunity by purchasing liability insurance which covered the injured person's property. 29 V.S.A. § 1403.

Arthur Wells obtained a judgment against Orleans Village for damages for the destruction of certain snow removal equipment. The judgment was affirmed by this Court on appeal. *Wells* v. *Village of Orleans, Inc.*, 132 Vt. 216, 315 A.2d 463 (1974). The village hired its own counsel after the insurer, Union Mutual, refused to defend, basing its refusal on an exclusionary provision in the liability insurance policy. Specifically, this provision excluded damage to "property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." Union Mutual concluded that the allegation in Wells' complaint that he (not the equipment) was under the direction and control of the village's agent removed the claim from policy coverage.

The village paid Wells and brought this breach of contract action against Union Mutual. The trial court denied the insurer an opportunity to relitigate the applicability of the policy's exclusionary provision. It took judicial notice of the record in *Wells* v. *Village of Orleans, Inc., supra.* In *Wells* v. *Village of Orleans, Inc.*, the trial court found that a liability insurance policy was in force and that the destroyed equipment was at all times owned, operated, and controlled by the plaintiff Wells. Therefore, the lower court in the instant case directed a verdict for the village, from which Union Mutual now appeals.

The pertinent part of 29 V.S.A. § 1403 provides that "when a municipal corporation purchases a policy of liability insurance under section 1092 of Title 24 . . . it waives its sovereign immunity from liability to the extent of the coverage of the policy and consents to be sued." This statute introduces a few additional problems into the ordinary relationship between injured party, potential insured, and insurer. Ordinarily, an injured party may obtain a judgment against the potential insured regardless of the existence of insurance coverage on the defendant's conduct. The existence of insurance eases practical financial recovery problems for the plaintiff; it is irrelevant to the defendant's liability. Policy coverage is not a central issue; in fact, the very mention of the subject can be so prejudicial as to bring about a mistrial. *See Duval* v. *Diamondstone,* 132 Vt. 176, 179, 315 A.2d 498 (1974).

When 29 V.S.A. § 1403 is involved, the issue of coverage is crucial, and the first trial court could not have found for Wells if the exclusionary provision of the policy precluded coverage. The village pleaded the issue of sovereign immunity, and the insurance policy was an exhibit. A judgment for Wells would have been as inconsistent with an effective policy exclusionary provision as it would have been with findings of assumption of risk or contributory negligence. *Wells* v. *Village of Orleans, Inc., supra,* 132 Vt. at 222, 223.

Where a liability insurer refuses to defend an insured after timely notice, the judgment in the prior case "is binding upon the insurer as to issues which were or might have been litigated therein, when the insurer is later sued by the injured person." 44 Am.Jur.2d *Insurance* § 1587, at 476; Annot., 27 A.L.R.3rd 350, 354 (1969). The concluding adverbial clause is descriptive of the usual alignment of the parties rather than a limitation, for the annotation contains cases endorsing conclusiveness where the second suit is brought by the insured rather than the injured person. *See Renschler* v. *Pizano,* 329 Pa. 249, 198 A. 33, 35 (1938). However, the fact that the village rather than Wells brought this second action merits, and will receive *infra,* further discussion.

Union Mutual argues that it has been deprived of the day in court to which it is entitled. *B. & E. Co.* v. *Bessery,* 130 Vt. 597, 601, 298 A.2d 544 (1972). It cannot be gainsaid that this Court has long evidenced concern that each man have his day in court. *Trapeni* v. *Walker,* 120 Vt. 510, 144 A.2d 831 (1958) ; *Gilman* v. *Gilman,* 115 Vt. 49, 51 A.2d 46 (1947).

But these cases should not, and in the majority of jurisdictions considering the issue have not, been applied to the potential insured/insurer relationship. For there the general rule is that an insurer who refuses to defend is bound by issues actually or necessarily litigated in the first trial. Annot., *supra,* at 354. "[I]t would be anomalous for a court to find a critical fact one way in the tort action and the opposite way in the proceeding against the insurer." *Id.*

Union Mutual argues that the better reasoned cases depart from the general rule and allow the insurer to litigate the coverage issue even where it has been considered in the first action. *See e.g., Farm Bureau Mutual Automobile Ins. Co.* v.

*Hammer,* 177 F.2d 793 (4th Cir. 1949); *The Effect of Collateral Estoppel on the Assertion of Coverage Defenses,* 1969 Colum. L. Rev. 1459. The departure is explained by the fact that, in certain factual situations, if the insurer protects its own interests in the first action, its argument will be prejudicial to the insured. For example, liability for intentional injury rather than for negligence could result where an insurer asserts an intentional injury exclusionary provision.

The inapplicability of this reasoning to the instant case is obvious. A finding that the village was not negligent or one that it was not covered by insurance will preclude liability for both the village and Union Mutual. To this extent, the interests of the insured and the insurer are identical. The insurer could not protect its interest to the prejudice of the insured.

■ Union points to the fact that it was not given notice that the village would rely on sovereign immunity. But an insurer who refuses to defend after timely demand is made upon it to do so cannot control the defense or expect advance notice of the refused party's trial strategy. 44 Am.Jur.2d *Insurance* § 1549, at 431–32; 49 A.L.R.2d 694, 700 (1956). Union Mutual cannot complain that the village did not notify it of the amended pleadings raising the issue of sovereign immunity. It could reasonably expect the village to so plead. Had it had second thoughts about its refusal to defend or been concerned about the insured's ability to conduct a defense, various steps were available to it. A declaratory judgment proceeding is the most apparent.

■ While Union Mutual did not do so below, it contends here that the village was impartial as between being found not negligent and being found negligent with the insurer footing the bill, and therefore did not vigorously assert its defense on the coverage issue. This argument is speculative and assumes that the village overlooked the possibility of increased rates should it seek to renew its policy after suffering a judgment. While Union Mutual might now believe that its counsel could have done a better job on the coverage issue, it unjustly turned down its opportunity to act on this belief. The paragraph in Well's complaint on which it based its refusal to defend was ambiguous and did not, on its face, bring the action within the

exclusionary provision. *See Town of South Burlington* v. *American Fidelity Co.*, 125 Vt. 348, 350, 215 A.2d 508 (1965). A purchaser of liability insurance has a right to expect not only indemnification at the end but also a shield against liability claims at the outset. *American Fidelity Co.* v. *North British & Mercantile Ins. Co.*, 124 Vt. 271, 274, 204 A.2d 110 (1964). A much more persuasive showing of fraud or collusion must be made before a trial court before relitigation of an issue once decided will be allowed. The insured did not protect its interest to the prejudice of the insurer.

■ We are aware that our decision here allows a party to utilize an issue upon which he went down to defeat as a sword against the insurer. We stated as a general rule in *Fletcher* v. *Perry*, 104 Vt. 229, 232, 158 A. 679 (1932), that "no person can claim the benefit of a judgment as an estoppel upon his adversary unless he would have been prejudiced by a contrary decision of the case." The village would have been benefited rather than prejudiced by a contrary decision. However, the quotation from *Fletcher* v. *Perry, supra,* is one way of expressing the recently oft-questioned mutuality of estoppel rule. Annot., 31 A.L.R.3rd 1044, 1060 (1970). Liability insurance was in no way involved in *Fletcher,* and the relationship among injured party, potential insured, and insurer has been considered by many courts to be a traditional exception to the mutuality of estoppel rule. Annot., *supra,* at 1065. Therefore its applicability here is rejected prior to consideration of the unique aspects of 29 V.S.A. § 1403 that we feel mandate the disposition of this case.

*Judgment affirmed.*

**Barney, C.J.** (concurring). I concur in the result reached by the main opinion in this case. It seems plain that the right of the insurer, on the facts of this case, to raise the issue of relitigating the factual questions determining coverage is compromised by its own actions. Its refusal to defend was expressed early in the development of the matter and essentially ended its participation in the controversy. No attempt was made for any agreement, such as by a reservation of rights, by which the matter could be carried forward at least to the

point of the appearance in the case of the definitive factual issue suggesting a dispute as to coverage.

The duty to defend is broader than the duty to indemnify. *Town of South Burlington* v. *American Fidelity Co.*, 125 Vt. 348, 350, 215 A.2d 508 (1965). When the company so swiftly abandoned its contractual obligation against, at best, an ambiguous analysis of the exclusionary availability, it left the insured to go forward. Admittedly, where there is an inconsistency in defenses, at some point, the insurance company must take steps to protect its contractual indemnification duty. Even so, the existence of the contract may, even in such a case, leave remaining a duty to reimburse for legal costs. *See The Effect of Collateral Estoppel on the Assertion of Coverage Defenses,* 1969 Colum. L. Rev. 1459, 1469.

This being so, and agreeing that collateral estoppel has limits based on adversity of interests, I cannot agree that the costs of litigation themselves and alone can supply the adversity that bars estoppel. This interest would rather appear to be fully embraced by the duty to defend.

I am authorized to say that Justice Shangraw joins in this concurrence.

**Larrow, J.** (dissenting). I cannot subscribe to affirmance of the judgment below.

Were the matter urged before us on appeal, the action of the trial court in taking judicial notice, over objection, of the record in the prior litigation would require reversal, since that action was between different parties. *Hanley* v. *United Steel Workers,* 119 Vt. 187, 122 A.2d 872 (1956). Not being briefed, however, this error is waived. *Appeal of Fowler,* 130 Vt. 176, 288 A.2d 463 (1973). Thus, for present purposes, the material facts dealt with in the majority opinion are properly for our consideration.

To these facts, the majority would apply the general rule that an insurer who refuses to defend is bound by issues actually or necessarily litigated in the first trial. Seemingly, however, recognition is accorded to the exception, urged by appellant, that this rule does not apply to factual situations where, if the insurer protects its own interests in the first action, its argument would be prejudicial to the insured. The exception has been succinctly stated:

The judgment should operate as an estoppel only where the interests of the insurer and insured in defending the original action are identical—not where there is a conflict of interests. *Ferguson* v. *Birmingham Fire Ins. Co.,* 254 Ore. 496, 460 P.2d 342, 349 (1969).

*See also,* to the same general effect, *Farm Bureau Mutual Automobile Ins. Co.* v. *Hammer,* 177 F.2d 793 (4th Cir. 1949).

The exception is a logical one, and, as the majority points out, is commonly confronted where an alleged personal injury may be either negligent or intentional, with insurance coverage not afforded under an intentional injury exclusion.

It is with the statement of the majority that the inapplicability of this exception to the instant case is "obvious" that I must respectfully disagree. 29 V.S.A. § 1403 is a somewhat unique statute, in that the purchase of insurance against a risk formerly precluded by the defense of sovereign immunity *pro tanto* destroys the defense. We are pointed to no case precisely in point under a similar statute, so that our decision here must rest largely on principle and analogy. My analysis of the course of this litigation would indicate that the interests of the insured and the insurer, at the first trial, were not identical, as held, but diverse.

It is true, so far as liability to claimant Wells is concerned, that the insured village is equally protected whether or not there is coverage. If there is, Union Mutual "foots the bill." If there is not, sovereign immunity, at least until now, precludes liability in this jurisdiction. To this extent, the village would be impartial in its conduct of the original defense. Even if this impartiality were total, however, it falls far short of advocacy of the insurer's position that could be said to be a meaningful presentation justifying binding the insurer by the result. The reference in the majority opinion to the possibility of increased rates upon policy renewal is completely outside the evidence; there is no evidence whatever of either indicated renewal or of rates set on the basis of an insured's past experience. To the contrary, there is an unconsidered element which makes the position of the parties clearly adverse. While it is true that the non-existence of coverage affords to the village the defense of sovereign immunity, it still leaves it with the cost and expense of defending the liti-

gation. On the other hand, if there is coverage, the insurer is liable for all those costs and expenses, so that the village would be totally harmless, *Lord & Taylor, Inc.* v. *Yale & Towne Mfg. Co.*, 230 N.Y. 132, 129 N.E. 346 (1920). Coverage is distinctly to the advantage of the village, rather than absence of coverage. Properly advised, as we must assume it was, the village would be attempting to show coverage, not its absence. And, indeed, the record of the previous appeal demonstrates this point. Briefing assumption of risk, contributory negligence, and measure of damage, the insured gave no attention at all to the question of coverage. *Wells* v. *Village of Orleans, Inc.*, 132 Vt. 216, 315 A.2d 463 (1974). In light of the complexity of this question, ignoring it completely cannot be said to be a fair representation of the insurer's viewpoint, such as would justify it being bound under the doctrine of collateral estoppel.

Much of the majority opinion deals with a question which in my view we do not here reach, the ultimate liability or non-liability of the insurer to the village. The findings of fact of which the trial court took judicial notice can only be the basis for deciding that issue if they are binding upon the insurer under the doctrine of collateral estoppel. The majority opinion involves two steps. It first makes these findings binding upon the insurer because of an asserted lack of conflict of interest in the first litigation, and then predicates liability upon the facts so found. I do not address this dissent to the second question, because I feel it is not properly reached. The ultimate result of this litigation could well be the imposition of liability on the insurer. It could well be the probable result if the trial court in this action agrees with the view of the evidence taken by the court in the original action. My sole contention is that the insurer is entitled to have those facts proved in an action to which it is a party and in which it can effectively defend its position without prejudice to the position of the insured vis-a-vis the claimant. It could not do this in the original action because the position of the parties was adverse.

Intimating without deciding, as the majority opinion seems to do, that the defendant here should have resorted to an action for declaratory judgment, and that its failure so to do militates against its present contentions, imposes upon a litigant a burden which is unjustified. There is nothing mandatory about declaratory judgment procedures. And the remedy

afforded thereunder was equally available to the plaintiff village.

I cannot conceive that substantially the same Court which held *res adjudicata* to be inapplicable in *Hill* v. *Grandey*, 132 Vt. 460, 321 A.2d 28 (1974), with all essential facts found and all essential parties joined in the first action, can hold in the situation here presented that the issue of coverage was truly "litigated", when both parties to the original action were basically interested in establishing it, and no one presented the contrary view.

I would reverse the judgment below and remand the cause for trial, to the end that the defendant may be afforded the day in court for which the majority opinion expresses, but does not evidence, appropriate concern.