### Romeo Raymond v. Lucette Raymond

[132 A2d 427]

January Term, 1957.

Opinion Filed May 7, 1957.

88

*N. Henry Press* for the libellee.

*Ready & Brown* for the libellant.

**Hulburd, J.** Under date of March 18, 1954, the libellant brought his libel for divorce from the libellee, Lucette Raymond. It alleged two grounds: one, that the libellee, "At divers times has committed adultery", and, secondly, that the libellee "treated the said libellant with intolerable severity". The libellee answered, and filed a cross-libel charging intolerable severity on the husband's part.

On Dec. 28, 1954, apparently at the libellee's request, the

libellant filed a bill of particulars as to the alleged acts of adultery claimed by him. It covered a period from April 23, 1951 to Dec. 24, 1954 and specified eight different acts of adultery, giving date, place and name of man with whom each act was claimed to have been committed. A hearing was held on the libel and cross-libel in May, 1955. As a result, a divorce was granted the libellant on the ground of adultery, the cross-libel dismissed, and property and custody orders were made. Numerous exceptions were taken by the libellee in connection with the hearing and the resultant findings and decree. We will proceed to deal with those which have been briefed for our consideration.

The libellee's first exception, as briefed, is to the court's finding No. 13 which reads as follows:

"13. On August 26, 1954, a time subsequent to the institution of these divorce proceedings and during a period when the libellee had been given exclusive custody of the principal Raymond living quarters in the South Main Street property, the libellee met one Charron in the park in St. Albans. Charron had been drinking and had some liquor in his possession. The libellee invited Charron to her home on South Main Street. Charron and the libellee proceeded by taxi to the South Main Street location. In the dining room of the Raymond home the libellee and Charron had a drink and embraced. Mrs. Raymond guided Charron to her bedroom upstairs. Shortly after Mrs. Raymond entered the bedroom the bedroom light went out. While the libellee and her male companion were in the bedroom the libellant entered the second story of the Raymond house by way of a porch and climbed through the window. As he was entering the window the libellee left the bedroom to investigate the noise created by the libellant's entrance. At this time Mrs. Raymond was clad only in a housecoat. When the libellant reached the bedroom Charron was clad only in an undershirt. The libellee's slippers were located at the foot of the bed. The Libellant struck Mrs. Raymond's male companion

inflicting serious bodily injury upon him. At about this time the St. Albans police arrived to intercede and quell the disturbance.

"The court finds Mrs. Raymond's explanation of the presence of the male companion in her bedroom entirely unworthy of belief. Prior to her husband's intervention, the libellee had both the disposition and opportunity for illicit intercourse with her companion."

The libellee's exception to this finding goes to the last sentence in the last paragraph. The libellee has not argued that what the court has found in the first paragraph is unsupported by the evidence. The claim is that the final sentence stating that the libellee had the opportunity and disposition for illicit intercourse with Edward Charron is not supported by a preponderance of evidence. The attorney for the libellee suggests that the findings of fact fail to reveal any other incident in which Charron and the libellee are "intimately associated", and that the court's finding as to disposition and opportunity, therefore, must be determined wholly on this sole incident.

█ We have no hesitancy in stating that a finding of criminal disposition and an opportunity to commit adultery may be based on a single incident as well as upon a series of episodes. Where the incident is comprehensive, disclosing all the circumstances necessary to support the finding, the court is not prevented from making it because it stands as a single event. Episodes like witnesses are to be weighed and not counted. It is enough if there was evidence tending to show the finding as made. Its weight and sufficiency are for the trial court. The finding is not for revision here. *Taft* v. *Taft*, 80 Vt 256, 259, 67 A 703. Compare *Walker* v. *Walker*, 92 Vt 443, 445, 104 A 828.

█ The libellee says, however, that the "incident upon which the court found illicit intercourse" occurred subsequent to the institution of the divorce proceedings, and if the libellant intended to rely on such an act he should have pleaded it by supplemental petition. The libellee cites 17 Am Jur 311, in

support of this claim. It is true that the libellant did not adopt the procedure now suggested by the libellee. He did file a bill of particulars in which he specified, among others, two acts of adultery with Charron: one on Sept. 24, 1952, and another on Aug. 26, 1954. During the course of the hearing when evidence was offered in connection with the latter date, the libellee made no objection to it nor did she seek to limit its application. We think that failure to do so places the libellee in a position which does not entitle her to raise the question thereafter. *Steele* v. *Lackey*, 107 Vt 192, 200, 177 A 309; *Perkins* v. *Vt. Hydro-Electric Co.*, 106 Vt 367, 417, 177 A 631; *Gentes* v. *St. Peter*, 105 Vt 103, 104, 163 A 569. It should be borne in mind that the libel did contain a general allegation of adultery—limited to no particular person—as set forth earlier in this opinion. A bill of particulars, later filed, apprised the libellee of the very incident in question. We think under our practice that this procedure was sufficient. In *Hemenway* v. *Hemenway*, 65 Vt 623, 27 A 609, this Court held that a divorce for desertion might be granted upon a petition brought before the necessary three years had elapsed provided the period had fully run before trial. The Court in connection with that decision said at page 624: "Divorce proceedings are of the nature of session proceedings, and not subject to the ordinary rules of pleading and practice. Usually there are no pleadings except the libel. The libel is not required to conform to the common law rules in regard to declarations. The libel is frequently helped by rule for specifications**** from all that has been said in the decisions by this Court in divorce cases they may be regarded as exceptional, and not subject to the usual rules of pleading and practice. No right of the libellee is disregarded or curtailed by allowing, as has been the practice, the libel for a divorce for wilful desertion to be brought before the completion of the three consecutive years."

■ Since it has been held, where the ground for divorce is adultery,—in accordance with the practice by the English eccelesiastical courts,—that the complainant is not bound by the contents of his original complaint, but that fresh acts of adultery may be pleaded supplementarily [see 17 Am Jur at

p. 311] and since a supplemental petition would not have included any allegation which was not already asserted in the proceeding, we think that to insist on a supplemental petition, in addition to the bill of particulars, would be to require a useless act to be done. In order for a trial court to reach an intelligent conclusion, it is necessary that it should have before it a complete and up-to-date picture of the domestic situation. Having undertaken to deal with it under a libel and cross-libel it would be unfortunate, indeed, for the court to be unnecessarily limited to only a part of the story, leaving out the most recent episodes which go to make up the existing situation. We think, therefore, that procedure should be such as to facilitate a full picture of existing circumstances and that *Hemenway* v. *Hemenway, supra,* points out a proper course to this end. The libellee's exception on this point is without merit.

The libellee excepted to finding No. 20 on the ground that it was not supported by the evidence. Finding No. 20 reads as follows:

> "20. The Court finds that from time to time during the marriage the libellant had used intoxicating liquor. He has frequently quarreled with the libellee and on occasion such quarrels resulted in scuffles between the libellant and libellee. The Court, however, is unable to find that the libellant's conduct in this regard has been persistent. Further the conduct of the libellant toward the libellee has not been of a nature to cause any serious injury to the libellee or in any way endanger or threaten to endanger her health and physical well-being."

■ It is enough to say that the evidence bearing on this point was considerable and open to interpretation and evaluation. It did not include expert medical testimony. Various witnesses, including one living in an apartment in the home of the parties for a six months' period, had never seen the libellant under the influence of intoxicating liquor. The libellant's drinking was mostly confined to holidays and weekends at which times the wife frequently joined him in drink. The physical constitution of the wife was not affected sufficient-

ly to prevent her from staying out late into the night on frequent occasions. It was for the trial court to consider and weigh all this evidence together, having the advantage, which we do not, of observing the witnesses as they testified. In so far as the evidence was conflicting, all conflicts must be resolved against the excepting party. *LaPlante* v. *Eastman*, 118 Vt 220, 226, 105 A2d 265. The libellee's exception is of no avail.

Exceptions briefed as IV, V, VI, VII bear on findings related to the questions of custody of the minor children and property rights. They deal with a few of the many elements to be considered by a court in making a proper custody order. In order, they have to do with drinking by the father in the presence of the daughter [Finding No. 16]; the matter of the mother preparing proper food for the children and keeping them clean and healthy [finding No. 17]; the absence of disciplinary problems in the father's relationship to the son [finding No. 18]; and a finding that by industry and thrift, the libellant had acquired a net worth of $15,000 (finding No. 21). As to this latter finding the libellee assumes that the court found that only the libellant's thrift and industry contributed to the net worth. The court does not so state and we do not so assume.

■■ The evidence bearing on all these matters was conflicting and was for the trial court to resolve. *Handy* v. *Trudell*, 104 Vt 85, 156 A. 902. Even if unwarranted, most were findings which were not so essential as to be ground for reversal. *Partridge* v. *Cole*, 98 Vt 373, 127 A 653. Finding No. 17 was not unessential so we specially consider it. It reads as follows:

> "17. The court finds that the libellee's temporary custody of the daughter Elaine has been entirely improper and not conducive to the best interest of the minor girl. She has permitted Elaine to stay out at very late hours in the company of boys considerably older than she. On occasions the libellee has permitted Elaine to accompany her while she kept company with men in whom the libellee was interested. Her personal conduct has been dissolute and without regard for

proper maternal example. On one occasion Mrs. Raymond was intoxicated in a restaurant in the City of St. Albans with one of her daughters at an early hour in the morning. The record did not disclose whether the daughter was Elaine or the older daughter Louise. She has permitted Elaine to accompany her and one Frederick Hall, whom she met while confined at the Franklin County Jail, on rides about the streets of St. Albans."

The libellee excepts to this finding in part on the ground that it is inconsistent with finding No. 19 which was as follows:

"No. 19. The court finds that the libellee has provided good food and clothing and kept the children clean and healthy."

No inconsistency exists between findings No. 17 and 19. Finding No. 17 goes to the moral aspect of child-custody; finding No. 19 does not. Finding No. 17 has support in the evidence and the incident covered in finding No. 13 quoted herein tends to corroborate the trial court's view of the libellee's moral nature. No error appears.

In connection with her exception to the decretal order granting the libellant a divorce on the grounds of adultery, the libellee has briefed but a single ground, namely "that the Charron incident is the one upon which the court finds illicit intercourse" and that since this took place subsequent to the bringing of the libel by the libellant it can not be availed of to support the decree. For reasons stated earlier in the opinion this exception is without merit.

The libellee excepted to the second paragraph of the decretal order dismissing the cross-libel. As on the libel itself, the weight and sufficiency of the evidence was for the trial court. Its findings are not subject to revision here. *Taft* v. *Taft, supra*, 80 Vt 256, 259, 67 A 703.

■ The libellee excepts to paragraph three of the decretal order which awards the custody of the minor children to the libellant, the father. Besides the children now of age, there are a daughter, Elaine, who was fourteen at the time of the hearing and a son, Carl, who was then ten years old. We

think that enough appears in findings already quoted in this opinion to justify the trial court's order. By so holding, we do not wish to imply that all the evidence concerning the father portrays him to be ideally suited to have custody of the children in question. The matter of custody is not an easy one for the court to determine, and it often involves a balancing of the advantages and disadvantages incurred by granting custody to one spouse or the other. The good of the child is the paramount consideration and it is for the court to weigh every circumstance bearing on the child's future welfare in passing on this question. *Deyette* v. *Deyette*, 92 Vt 305, 309, 104 A 232, 4 ALR 1115. "To that welfare, the rights, claims, and personal desires of the parents, and even the wishes of the child, if opposed to that object, must yield." 27 CJS at p. 1170. Although the record may disclose, as the attorney for the libellee says, "considerable evidence to qualify the libellee in the category of a good mother", there is much indicating otherwise and after weighing it as a whole, we are not disposed to disturb the custody order as made by the trial court. This exception is not sustained.

Lastly, the libellee complains as to the decree of the court below concerning property rights, claiming that "the court abused its discretion in the division of said property and alimony". In brief the decretal order provided as follows: the libellant was ordered to pay the libellee forthwith the sum of $2,200. in lieu of any property or alimony payments. The home place was decreed to the libellant, who was ordered to establish forthwith a $5,000 trust fund with a local bank to be held for the education, support and maintenance of the minor children under specified conditions, and lastly the libellant was ordered to pay $350 counsel fees for the libellee in the matter.

Findings of Fact Nos. 2, 4 and 6 indicate substantially that through the joint efforts of the parties, property had been acquired and that in 1951, there was purchased real estate for $16,000.00, upon which there is presently a mortgage of $2,000.00.

The record also discloses that the libellant has a barber shop with three barber chairs and equipment valued at $400.00,

13 shares of Central Vermont Public Service Corporation stock, household furniture and furnishings valued at $800-$900, and a 1947 Chevrolet automobile valued at $200.00. The libellant has had an income from his barber shop of about $100.00 per week, and has filed an income tax return in 1954 for $4,499.20 gross income from said barber shop, and a net of $3,664.73; dividends from stock of $66.84, and rents of $20.00 per week.

■ In *Whitcomb* v. *Whitcomb*, 115 Vt 331, 335, 58 A2d 814, this court said: "Upon the dissolution of a marriage, the court may decree to the wife such part of the husband's property, or such sum of money in lieu thereof, as it deems just, having regard for the circumstances of the parties, respectively. (Citing P. L. 3155 now V. S. 47, §3244.) In fixing the amount of the award, the court is vested with a wide, but judicial discretion. In determining what will be a just award it is the duty of the court to give consideration to all facts affecting the situation of either party that will be helpful to such determination. *Shaw* v. *Shaw*, 99 Vt 356, 358, 133 A 248". The libellee has not pointed out to us in what respects, if any, the court below has failed to observe the foregoing rule. Moreover in V. S. 47, § 3251 the court's duty in this regard was spelled out in greater detail stating the court's decree should be just and equitable "having regard to the respective merits of the parties, to the condition in which they shall be left by such divorce, to the party through whom the property was acquired, and the burdens inposed upon it for the benefit of the children". With all these factors in mind we cannot say that the court's order is so unreasonable or unjust as to amount to an abuse of discretion on the trial court's part when it decreed as it did.

*Decree affirmed.*