# Town School District of St. Johnsbury v. Town School District of Topsham

[ 169 A.2d 352 ]

January Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 1, 1961

*Arthur L. Graves* for the plaintiff.

*Wilson, Keyser & Otterman* for the defendant.

**Barney, J.** Elmer Black, a resident of the Town of Topsham, enrolled in St. Johnsbury Trade School in the second semester of the school year 1957-1958. This institution is a public secondary school offering a four-year course comprising grades 9, 10, 11 and 12. At the time of his enrollment he was already in his twenty-first year and was listed as a legal voter of the town of Topsham. He completed that semester and attended for the full school year 1958-1959. No question is raised concerning his scholastic qualifications to enter the school, nor is any claim made that he did not satisfactorily complete the courses prescribed while attending the school. The defendant, the Town School District of the Town of Topsham, attaches significance to the fact that Black, after satisfactorily completing elementary school in Topsham in June 1953, remained at home and attended no school until the fall of 1954. At that time Black entered the U. S. Navy and served for three years. It was after his discharge that he enrolled in St. Johnsbury Trade School.

The plaintiff, the Town School District of the Town of St. Johnsbury, brought suit against the defendant to recover $500.00 tuition costs incurred by Black. With the facts agreed to, the defendant resisted payment on the sole ground that Elmer Black did not qualify as a legal pupil for which the defendant was required to pay tuition because he had attained the age of twenty-one prior to enrollment.

The Caledonia Municipal Court awarded judgment for the full amount to the plaintiff, from which judgment defendant brings this appeal.

The duty of town school districts to provide secondary education is expressed in 16 V.S.A. §793, subsections (a) and (b), in the following language:

"(a) Each town district shall maintain a high school or furnish secondary instruction, as hereinafter provided, for its advanced pupils at a high school or academy, to be selected by the parents or guardian of the pupil, within or without the state. The board of school directors may both maintain a high school and furnish secondary instruction elsewhere as herein provided as in the judgment (sic) of the board may best serve the interest of the pupils.

"(b) Each town district shall pay tuition per pupil per school year as billed, but not in excess of $325.00 unless authorized by a vote of the town school district, but in no case shall the tuition exceed the cost per pupil per year for the maintenance of such school for the previous year."

Following that statute is 16 V.S.A. §794, which provides as follows:

"An interested person may appeal to the board of education from the action of the board of school directors in regard to the tuition to be paid for advanced instruction or in regard to the school or academy a pupil may attend, and its decision shall be final. A person shall not be deprived of such instruction by reason of age."

The plaintiff's position is that the last sentence of that section clearly makes the age of the student immaterial and authorizes recovery of the tuition costs.

Both plaintiff and defendant claim support for their positions under the statutory definition of "legal pupil" in 16 V.S.A. §1073:

"The words 'legal pupil' shall mean a child between the ages of six and eighteen years and a child who will become six years of age on or before January 1 next following the beginning of the school year, but a person who has become eighteen years of age shall not be deprived of public school advantages on account of age. Except as herein provided, a child who is not a legal pupil shall not be received into a public school, except a kindergarten, with-

out the consent of the superintendent of such school; and a child under seven years of age shall not be received into a public school, except a kindergarten, after the beginning of the fall term without the consent of such superintendent."

Each contends that the phrase "* * * but a person who has become eighteen years of age shall not be deprived of public school advantages on account of age." is expressive of legislative policy sustaining its stand on the obligation to pay tuition.

The plaintiff argues that the statutory language is clear and declarative of a reasonable legislative intent, from which it follows that this Court is bound by the plain meaning of the literal wording of the statute.

The defendant, on the other hand, makes two points. First, it says that the statutes relating to primary and secondary education taken as a group are replete with inferences that they apply only to minors. Secondly, the defendant contends that an inference can be drawn from 16 V.S.A. §1073 that age is no barrier to continuing secondary education provided the student passes his eighteenth birthday in the course of pursuing his secondary education.

■■ The whole concern of statutory interpretation is the fulfillment of legislative intent. The definitive source of that intent is the statute itself, if the language of the enactment plainly sets it forth. Only when the objective of the legislation would be defeated by literal enforcement of statutory provisions can the Court, in construing a particular law, depart from the ordinary and usual meaning of the language used therein. Otherwise, enforcement must be according to the statute's obvious terms. *Lewis* v. *Holden,* 118 Vt. 59, 62, 99 A.2d 758.

■ The language used in the sections before the Court is certainly plain, and the purpose expressed clearly. In simple statements, both 16 V.S.A. §794 and 16 V.S.A. §1073 remove age as a barrier to the receipt of a public school education. Departure from such straightforward expression requires a convincing demonstration that the legislative intent cannot properly be as literally rendered. It must be established that carrying out the precise wording of the statute either produces results which are manifestly unjust, absurd, unreasonable or unintended, or conflicts with other expressions of legislative intent

on the subject which must be held paramount. For this reason, all acts relating to the same subject matter should be read in conjunction with it, as parts of one system. *Carpenter's Admr.* v. *Brown*, 118 Vt. 148, 153, 102 A.2d 331.

In that connection, the defendant asserts that an examination of the associated education statutes reveals a legislative intent to limit public school advantages to minors. The statutes of concern here are all grouped in Title 16, captioned "Education," of Vermont Statutes, Annotated, in Part 2, titled "Public Schools," and comprising sections 791 through 1483.

However, it must be recognized that the bulk of school affairs quite naturally deal with minors, and something more than a mere reference to pupils as "children" or an equivalent is required to overcome the plain language of 16 V.S.A. §§794 and 1073. This becomes clear when we examine the purposes of these various statutes.

16 V.S.A. §§1121, 1122, 1127 and 1128, which relate to the establishment of ages of compulsory school attendance and their enforcement, refer to the pupil concerned as "child." The compulsory school age does not reach beyond minority, so that the use of the word "child" is in keeping with the legislative purpose. That purpose does not conflict with the stated intention not to restrict secondary school attendance on the basis of age.

Similarly, in other statutes such as 16 V.S.A. §§1075, 1384 and 1422 reference is had to the parent or guardian or person having control of a pupil, not with the intent of excluding those who had reached majority, but merely to designate where certain responsibilities lie where pupils are in fact minors.

This may also be the explanation for 16 V.S.A. §793(a). In it appears the phrase "* * * a high school or academy, to be selected by the parents or guardian of the pupil * * *" This occurs in the very statute establishing the duty to provide secondary education, and therefore merits close attention.

■■ There is another familiar rule of construction declaring there is a presumption that all language is inserted in a statute advisedly, and effect must be given to each and every part of an act. *Tower* v. *Tower*, 120 Vt. 213, 226, 138 A.2d 602. Applying it here, it can be said that 16 V.S.A. §793 supports an inference of minority inconsistent with the plain denial of age limitation in 16 V.S.A. §794.

It should be remembered that, beyond this inference, there is nothing in 16 V.S.A. §793 amounting to a positive statement that public-supported secondary education ends at majority. By itself, this inference might not justify a turning away from the express language removing the age barrier. However, it beclouds the picture and thereby provides a basis for examining the legislative history with the aim of dispelling any doubts as to statutory meaning or purpose. *In re Cartmell Estate,* 120 Vt. 228, 230, 138 A.2d 588.

One of the first things revealed by an examination of the statutory history is that 16 V.S.A. §§793 and 794, when originally enacted by No. 27 of the Acts of 1902, constituted a single section. This is a clear indication that at the time of passage the express-language age-provision was intended to govern the whole statute. The two continued a single section until they appeared in the Public Laws of 1933 separated, but successively numbered. This appears to have been done for clarity, and with no purpose to deny the application of the language removing the barrier of age to the provisions of what is now 16 V.S.A. §793.

Looking again at No. 27 of the Acts of 1902 we find it contained the following with respect to instruction of advanced pupils: "No person under 21 years shall be deprived of the advantages of this act on account of age." Here, indeed, is the very language that the defendant would have us read into the present statute. However, the phrase "under 21 years" did not indicate that the legislature intended all community responsibility for education to terminate at majority, but rather an intention to extend it three years beyond majority in some cases. This can be said with assurance because at that time the age of legal majority for girls was eighteen years. See *Rufus* v. *Daley,* 103 Vt. 426, 154 A. 695. This was changed by No. 153 of the Acts of 1923, which raised the age of majority for females to twenty-one.

■ Prior to this, in No. 50 of the Acts of 1906, the legislature discarded the "under 21 years" language and put the provision substantially in the form it is today. To this elimination some purpose must be assigned. *Conn* v. *Brattleboro,* 120 Vt. 315, 322, 140 A.2d 6. The most obvious is that age even beyond majority was now to be no bar to the furnishing of a secondary school education.

In order to be sure that in these enactments some age restraint was not in force elsewhere, overcoming the force of the excision, we must

consider also the history of 16 V.S.A. §1073, quoted earlier. The Vermont Statutes of 1894 in §709 defined "legal pupils" as those "between the ages of 5 and 21 years." No. 26 of the Acts of 1900 changed the age limits to 5 and 18 and added the following qualification, "but persons past eighteen years of age shall not be deprived of public school advantages on account of age." This is, of course, very like the present language. However, a series of changes in this phrase serves to demonstrate the purpose of the present reference to eighteen years.

In the Public Acts of 1906, §1027, the phrase has become "but no person shall be deprived of public school advantages on account of age." Certainly there is nothing equivocal about that statement. Why, then, were there further amendments?

An examination reveals that when the phrase is unqualified, as it is in P.S. §1027, the statute contradicts itself with respect to the age of commencing school. If the phrase involved is given effect, there can be no enforceable lower age limit for commencing school. Precocious children of four years or even less could plausibly be pressed upon the public school system. This is not speculation, for we find in No. 69 of the Acts of 1910 an attempt to reach that very problem. The phrase there becomes, "no person over five years of age shall be deprived of public school advantages on account of age."

This apparently did not satisfactorily meet the problem, either, because it was soon amended. Undoubtedly it amounted to compelling the institution of classes for kindergarten age children, rather than leaving the conducting of such kindergartens to the option of the local voters. So, in No. 64 of the Acts of 1915, a general codification of school laws, we find the following in section 47, pertaining to the definition of "legal pupil": "* * * no person who has become eighteen shall be deprived of public school advantages on account of age."

There is only a slight grammatical variation between that version and the present law. It would seem clear that the positive action of the legislature has overcome whatever conflicting inferences concerning student age limits may lurk in the various associated statutes. The removal of the restrictive language relating to attaining age twenty-one, taken with the total absence of limiting language in the very statutory statement directed at permitting education beyond compulsory school age, demonstrates that the legislature did not in-

tend that there be any age limit on the furnishing of public education through the secondary level. This denial of age limitation governs the very statutory section (16 V.S.A. §794) under which the plaintiff is entitled to recover tuition costs, indicating that the instruction is to be provided at public expense.

Defendant also argues for an inference that requires secondary education to be commenced prior to age eighteen and pursued without interruption in order to justify tuition payments for students after they reach majority. It is conceded that this is nowhere spelled out in the statutes, but defendant finds it inferred from the "person who has become eighteen years of age" phrase of 16 V.S.A. §1073. Nothing in the legislative history of that phrase, which we have just reviewed, supports such an inference nor, in the light of our view of 16 V.S.A. §794, is there any legislative purpose requiring that interpretation. To read such a condition into the enactment would be to go counter to its plain language, and we cannot accept the contention. *Donoghue* v. *Smith,* 119 Vt. 259, 265, 126 A.2d 93. For like reasons consideration of the consequences are not for this Court in this case, but for the legislature. *Donoghue* v. *Smith, supra,* at 267.

*Judgment affirmed.*