## Roger L. Paquette, Jr. v. Judith Ann Paquette

[499 A.2d 23]

No. 83-193

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed June 21, 1985

---

\* *State* v. *Williams,* 137 Vt. 360, 364, 406 A.2d 375, 377 (1979), *cert. denied,* 444 U.S. 1048 (1980).

*Olin R. McGill Jr.* of *Kelley & Meub, Ltd.*, Middlebury, for Plaintiff-Appellant.

*Peter F. Langrock* and *Emily J. Joselson* of *Langrock Sperry Parker & Wool*, Middlebury, for Defendant-Appellee.

**Gibson, J.** Plaintiff appeals from a final judgment that (1) dismissed his petition for custody of his stepson, brought under 15 V.S.A. §§ 291 and 293, and (2) denied his motion to amend the divorce complaint to ask for custody of the stepson. Although there has not yet been a final hearing on the divorce complaint, the trial court found there was no just reason for delay and expressly directed the entry of a final judgment in these matters. Accordingly, the matter is properly before us. V.R.C.P. 54(b).

Plaintiff and defendant were married in December, 1977. One child, Nathan, now age 6, was born of the marriage. Following hearing, the court awarded temporary custody of Nathan to plaintiff, pending final hearing in the divorce action. Defendant also has a child, Gary Dion, now 12, born of a previous marriage. His custody is the focus of this appeal. Plaintiff's attempts to obtain custody of Gary Dion, through the two separate routes re-

cited above, were rebuffed by the trial court on the ground that it lacked jurisdiction to award custody of a child to its stepparent. We reverse.

## I.

First, we consider the separate petition brought by plaintiff under 15 V.S.A. §§ 291 and 293. Section 291(b) provides that in cases of desertion or nonsupport, the court may make "such orders as it deems expedient concerning . . . the care, custody, education and maintenance of the minor children of the parties. It may determine with which of the parents the children, or any of them, shall remain . . . ." The statute further provides, "[f]or the purposes of this section 'children' shall include stepchildren." *Id.* § 291(g).

Section 293 states that "[w]hen parents of minor children, or parents and stepparents of minor children, are living separately, on the petition of either parent or stepparent . . . the [superior] court may make such decree concerning the care, custody, maintenance and education of the children" as it would in cases of desertion or nonsupport.

Thus, on their face §§ 291 and 293 both clearly empower the superior court to award custody of a minor child to a stepparent while the parties are still married and when circumstances warrant (i.e., desertion, nonsupport, living separately). The fact that a divorce complaint may be pending, or brought at a subsequent time, does not deprive the court of jurisdiction over a § 291 or § 293 proceeding. As integral parts of the statutory scheme, §§ 291 and 293 must be construed in pari materia with other sections of the domestic relations law. *Beaudry* v. *Beaudry*, 132 Vt. 53, 56, 312 A.2d 922, 924 (1973). Although it is somewhat unusual to file a separate petition when a divorce complaint is already pending, the statutes do not prohibit the procedure, and the court was in error in dismissing the petition.

## II.

Plaintiff's second argument presents a more difficult issue. In denying plaintiff's motion to amend the complaint to request custody of the stepchild, the trial court held that it had no jurisdiction to grant the relief requested because plaintiff's stepchild is not a "child of the marriage." 15 V.S.A. § 652, which sets forth

the guidelines governing the award of child custody in a divorce proceeding, contains the following language:

> In an action under this chapter, the court shall make an order concerning the custody of any minor *child of the marriage*. The court shall be guided by the best interest of the child . . . .

*Id.* § 652(a). (Emphasis added.)

The term "child of the marriage" is new to Vermont. It is not defined in the statutes and first appeared when § 652 became law on July 1, 1982. Prior to that date, the applicable statute spoke in terms of the "children of the parties," *id.* § 292, a term neither defined by the legislature nor construed by this Court. Except for the statements contained in §§ 291 and 293, previously discussed, one looks in vain for any statutory guidance concerning the standing of a stepparent to petition for custody of a stepchild in a divorce proceeding.

When construing a statute, the function of the court is to ascertain and give effect to the intention of the legislature. *Hill* v. *Conway,* 143 Vt. 91, 93, 463 A.2d 232, 233 (1983); *Loeb* v. *Loeb,* 118 Vt. 472, 483, 114 A.2d 518, 526 (1955). If the meaning of a statute is plain on its face, it must be enforced according to its terms and there is no need for construction, *Hill, supra,* 143 Vt. at 93, 463 A.2d at 233; however, if doubts exist or if the statute is ambiguous, the legislative intent "should be gathered from 'a consideration of the whole and every part of the statute, the subject matter, the effects and consequences, and the reason and spirit of the law.' " *Langrock* v. *Department of Taxes,* 139 Vt. 108, 110, 423 A.2d 838, 839 (1980) (quoting *Holbrook Grocery Co.* v. *Commissioner of Taxes,* 115 Vt. 275, 278-79, 57 A.2d 118, 120 (1948)).

In this instance, § 652 not only requires the court to make an award of custody of any minor child of the marriage, it also provides that "[o]n petition of either parent or *any other person to whom custody has previously been granted,* . . . the court may annul, vary, or modify an order made under this section if it is in the best interest of the child . . . ." 15 V.S.A. § 652(d). (Emphasis added.) By its language, the statute recognizes the possibility of an award of custody to a third person, without specifying or limiting who that third person might be. In light of this ambiguity, we are unable to determine the legislative intent from the plain meaning of the words and must, therefore, look beyond the

language of the statute itself to determine that intent. *Langrock v. Department of Taxes, supra.* The statute leaves no doubt that, in making any custody award, the court must be guided by what will be in "the best interest of the child." *Id.* § 652(a) and (d).

Few courts have had occasion to construe the phrase "child of the marriage." In an early case, *State* v. *Taylor,* 125 Kan. 594, 264 P. 1069 (1928), the Supreme Court of Kansas held that a divorce order awarding custody of a child to her stepmother was not void under a statute directing that provision be made "for the . . . custody . . . of the minor children of the marriage," where the stepmother stood "in loco parentis" toward the child. It was the opinion of the court that the term " 'minor children of the marriage,' fairly interpreted, included the infant in question." *Id.* at 596, 264 P. at 1070.

The Kansas court later reaffirmed its position, when, under a statute identical in pertinent part to that in the earlier case, it affirmed the award of custody of a child to her stepmother, relying upon the holding in *State* v. *Taylor, supra. Anderson* v. *Anderson,* 191 Kan. 76, 379 P.2d 348 (1963). In both *Anderson* and *Taylor,* the court found the natural father to be an unfit parent and that it would be in the best interest of the child to live with the stepmother.

More recently, two other courts have been called upon to construe language similar to that of the Kansas statute. The Alaska Supreme Court, in considering a visitation request by a stepfather, adopted an approach similar to that of Kansas, holding that "where a stepparent has assumed the status of in loco parentis, a stepchild is a 'child of the marriage' " within the meaning of the statute; the court then remanded the case to the trial court for a determination of whether the stepfather actually stood in loco parentis to the child and, if so, whether visitation would be in the child's best interest. *Carter* v. *Brodrick,* 644 P.2d 850, 855 (Alaska 1982).

In California, the Court of Appeal, Fifth District, in a three-to-two decision, held that the statutory language "minor children of the marriage" did not give the court jurisdiction to award visitation privileges to the stepfather, and left the resolution of "this thorny problem" to the legislature, noting in passing that it did not find the result "particularly palatable." *Perry* v. *Superior Court of Kern County,* 108 Cal. App. 3d 480, 485, 166 Cal. Rptr. 583, 586 (Ct. App. 1980). A concurring associate justice suggested

that, if the stepfather had alleged that there were children of the marriage because he stood in loco parentis, the court might have had jurisdiction, but that the issue could not be determined because it had not been briefed or argued. *Id.* at 486, 166 Cal. Rptr. at 586-87. But see *Phillips* v. *Phillips*, 176 Or. 159, 172, 156 P.2d 199, 203 (1945) (refusing to grant custody of 15-year-old girl to stepfather on ground that girl was not a child "of the marriage").

■ Thus, where a statute has been silent about the relationship of stepchild and stepparent in a domestic relations custody or visitation dispute, courts have looked to the common law doctrine of in loco parentis for guidance. The term "in loco parentis" has been defined by this Court in the following manner:

> "In the place of a parent: . . . charged, factitiously, with a parent's rights, duties, and responsibilities." For such a relationship to come about as between stepparent and stepchild depends upon the intent of the stepparent "to be determined in the light of the circumstances peculiar to each case."

*In re Fowler*, 130 Vt. 176, 179, 288 A.2d 463, 465 (1972) (citations omitted). Thus, whether a stepparent has assumed the status of a person in loco parentis is a factual determination that depends upon the intent of the stepparent to assume that status. Where one stands in loco parentis to another, the rights and liabilities arising out of that relation are, as the words imply, exactly the same as between parent and child.

■ In weighing the respective merits of the "rights" of a natural parent against the best interests of the child, where the two forces are unable to be reconciled, the courts increasingly are recognizing that the best interests of the child must be given first priority. The principle was well expressed by the New York Court of Appeals:

> The parent has a "right" to rear its child, and the child has a "right" to be reared by its parent. However, there are exceptions created by extraordinary circumstances, illustratively, surrender, abandonment, persisting neglect, unfitness, and unfortunate or involuntary disruption of custody over an extended period of time. . . .
>
> The day is long past in this State, if it had ever been, when the right of a parent to the custody of his or her child,

where the extraordinary circumstances are present, would be enforced inexorably, contrary to the best interest of the child, on the theory solely of an absolute legal right. Instead, in the extraordinary circumstance, when there is a conflict, the best interest of the child has always been regarded as superior to the right of parental custody. Indeed, analysis of the cases reveals a shifting of emphasis rather than a remaking of substance. This shifting reflects more the modern principle that a child is a person, and not a subperson over whom the parent has an absolute possessory interest. A child has rights too, some of which are of a constitutional magnitude.

*Bennett* v. *Jeffreys*, 40 N.Y.2d 543, 546, 356 N.E.2d 277, 281, 387 N.Y.S.2d 821, 824-25 (1976) (citations omitted) (proceeding brought by unwed mother to obtain custody of 8-year-old daughter from custodian to whom child had been entrusted by mother's parents when mother was 15 years old; remanded for new hearing to determine what would be in best interest of the child).

Other courts have likewise accorded precedence to the best interests of the child when those interests conflicted with the rights of a natural parent. See, e.g., *Bryan* v. *Bryan*, 132 Ariz. 353, 359, 645 P.2d 1267, 1273 (Ct. App. 1982) (showing of in loco parentis relationship between child and stepparent, together with evidence that best interest of child will be served by allowing partial continuance of that relationship, may provide sufficient reason to limit presumptive right of natural parent to uninterrupted custody); *Root* v. *Allen*, 151 Colo. 311, 377 P.2d 117 (1962) (custody of 12-year-old girl awarded to stepfather instead of natural father, from whom child had been separated since infancy, on ground it would be in best interest of child even though father a fit parent; presumption that child's welfare is best served through custody of natural parent is rebuttable); *McGaffin* v. *Roberts*, 193 Conn. 393, 407, 479 A.2d 176, 184 (1984) (custody of daughter awarded to grandmother instead of father as being in best interest of child); *In re Ewing*, 96 Idaho 424, 427, 529 P.2d 1296, 1299 (1974) (award of custody to stepfather instead of father affirmed as being in best interest of the children); *Gribble* v. *Gribble*, 583 P.2d 64, 68 (Utah 1978) (stepfather entitled to hearing to determine whether he stood in loco parentis to wife's child and, if so, whether it was in child's best interest to grant him right of visitation); *In re Allen*,

28 Wash. App. 637, 649, 626 P.2d 16, 23 (1981) ("In extraordinary circumstances, where placing the child with an otherwise fit parent would be detrimental to the child, the parent's right to custody is outweighed by the state's interest in the child's welfare.")

 In Vermont, the legislature has clearly stated that, in considering issues of child custody, the courts are to be guided by the best interests of the child. 15 V.S.A. § 652(a) (divorce); 15 V.S.A. § 652(d) (modification of child custody order); 15 V.S.A. § 1032(a)(2) (Uniform Child Custody Jurisdiction Act). In 1984 the legislature enacted legislation directing the courts to employ the best-interests-of-the-child standard in resolving questions of grandparents' visitation rights. 15 V.S.A. § 1013. This standard has been the primary consideration in determining issues of custody for over sixty years. E.g., *Davis* v. *Davis,* 143 Vt. 100, 101-02, 465 A.2d 221, 221 (1983); *Jensen* v. *Jensen,* 141 Vt. 580, 581, 450 A.2d 1155, 1155 (1982); *Raymond* v. *Raymond,* 120 Vt. 87, 95, 132 A.2d 427, 432 (1957); *Deyette* v. *Deyette,* 92 Vt. 305, 309, 104 A. 232, 234 (1918).

The courts of this state have long recognized that, even in those early days when custody of a child was viewed as a form of property right,

> "the natural right of the father to the custody of his child cannot be treated as an absolute property right, but rather as a trust reposed in the father by the state as *parens patriae* for the welfare of the infant."

*Bioni* v. *Haselton,* 99 Vt. 453, 457, 134 A. 606, 607 (1926) (quoting *Lippincott* v. *Lippincott,* 97 N.J. Eq. 517, 519, 128 A. 254, 255 (1925)). *Bioni,* while dealing with the issue of custody in the context of a guardianship rather than a divorce proceeding, addressed the underlying considerations confronting a court when required to decide between a parent and a third party:

> [The parents'] right to the custody of minor children as against a stranger will, it has been said, control the judgment of the court, unless circumstances of weight and importance connected with the welfare of the child exist to overbear such parental right; although such right will not be regarded as controlling when to do so would imperil the child's safety, morals, health, or happiness. The court must look at the character, conditions, habits, and surroundings

of the parents, in solving this delicate question. . . . There is a presumption that the natural affection of a parent for a child will insure the faithful execution of the trust which he holds as natural guardian, and, while this presumption may be overcome by proof that his character, means, and surroundings are such as to render him unsuitable, if he is a proper person there is no occasion for his removal and the appointment of another.

*Bioni* v. *Haselton, supra*, 99 Vt. at 458, 134 A. at 607-08 (citations omitted).

When called upon to decide the issue of custody in a modification proceeding between the parents of a 10-year-old boy whose father had left the care of the child to an 83-year-old grandmother, this Court stated:

While it is apparent that the real issue . . . was whether the mother or the grandmother should have the actual and active custody . . ., the grandmother is actually a third person to this marriage relationship. As between a mother and a third party the mother must prevail in a custody case, *in the absence of compelling reasons to the contrary* . . . .

*Miles* v. *Farnsworth*, 121 Vt. 491, 495, 160 A.2d 759, 761 (1960) (emphasis added). Thus, this Court has, in the past, at least implied that custody of a child may, under certain circumstances, be awarded to a third party to the exclusion of a parent.

It takes no great stretch of imagination to visualize circumstances in which a child would be better off in the custody of someone other than a natural parent. For instance, it would not serve the best interests of a child to be placed with a parent who is unfit because of severe mental illness, incapacitating physical disability, or persistent neglect, abuse, or abandonment of the child. In addition, extraordinary circumstances may exist that would justify an award of custody to a nonparent. See, e.g., *Bennett* v. *Jeffreys, supra* (separation of mother from child for most of child's life, combined with mother's lack of established household, her unwed state, and child's attachment to her custodian, held to be an extraordinary circumstance warranting inquiry into best interest of the child); *In re Allen, supra* (growth and development of deaf child would have been detrimentally affected by placement with father who did not know sign language, but was

otherwise a fit parent; court determined that child's best interests required placement with stepmother and her children from a prior marriage, all of whom had learned sign language to help educate the deaf child and integrate him into the family). In such cases, the court should be free to look to what will serve the best interests of the child in deciding the issue of custody, as directed by the provisions of 15 V.S.A. § 652.

█ █ Both the right of a parent to custody and the liberty interest of parents and children to relate to one another in the context of the family, free from governmental interference, are fundamental rights protected by the due process clause of the Fourteenth Amendment to the United States Constitution. *Guardianship of H. L.,* 143 Vt. 62, 65, 460 A.2d 478, 479 (1983) (citing *Santosky* v. *Kramer,* 455 U.S. 745, 753 (1982)). Because of the deference accorded to family relationships by our Federal Constitution, we agree with those courts that recognize a presumption that the best interest of a child will be served by granting custody to a natural parent. E.g., *Bryan* v. *Bryan, supra,* 132 Ariz. at 357, 645 P.2d at 1271; *Root* v. *Allen, supra,* 151 Colo. at 317-18, 377 P.2d at 121; *In re Ewing, supra,* 96 Idaho at 425, 529 P.2d at 1297; *Doe* v. *Doe,* 92 Misc. 2d 184, 192, 399 N.Y.S.2d 977, 982 (Sup. Ct. 1977). The presumption, however, is rebuttable, but may be overcome only by clear and convincing evidence that the natural parent is unfit or that extraordinary circumstances justify an award of custody to a nonparent.

█ We hold, therefore, that, if a stepparent stands in loco parentis to a child of the marital household, custody of that child may be awarded to the stepparent if it is shown by clear and convincing evidence that the natural parent is unfit or that extraordinary circumstances exist to warrant such a custodial order, and that it is in the best interests of the child for custody to be awarded to the stepparent.

The plaintiff's motion to amend the divorce complaint should have been granted.

*Reversed and remanded for further proceedings consistent with the views expressed in the opinion.*

**Billings, C.J.,** concurring in part and dissenting in part. I concur with the majority opinion in that pursuant to a petition for custody, brought by a stepparent under 15 V.S.A. §§ 291 and 293,

the trial court was in error in dismissing the petition, because the applicable statute, 15 V.S.A. § 291(g), clearly and plainly states that " 'children' shall include stepchildren," and this matter must be reversed and remanded for hearing.

I must dissent from the majority's holding that the court was in error in denying plaintiff's motion to amend the complaint, to request custody on behalf of a stepparent.

15 V.S.A. § 652(a) plainly and clearly states that the court "shall make an order concerning the custody of any minor *child of the marriage*." (Emphasis added.) The court must give effect to the intention of the legislature, *Hill* v. *Conway*, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983), and if the meaning of the statute is plain on its face, it must be enforced according to its terms, without further construction. *Id.* In my view the statute here is plain on its face, and the statute only gives the court power to make custody orders to natural parents. *Phillips* v. *Phillips*, 176 Or. 159, 172, 156 P.2d 199, 203 (1945).

Even if we were unable to determine the legislative intent from the statute's express terms, and we examined legislative history to determine that intent, *Town School District of St. Johnsbury* v. *Town School District of Topsham*, 122 Vt. 268, 273, 169 A.2d 352, 355 (1961), the result would not change.

In examining the legislative history of 15 V.S.A. § 652, we begin by considering a portion of the original version of the proposed statute, not included in the final enactment:

> (f) If both parents agree, if the court finds that neither parent is fit to have custody, or if extraordinary circumstances, such as prolonged separation, occur between natural parent and child with the child developing a strong attachment to a custodian who is not a parent, the court may grant custody to a grandparent, an adult brother or sister, *a stepparent*, or some other person with whom the child has previously established a positive relationship.

Vt. House Bills, 1981, H.176 at 6-7 (emphasis added).

The above-quoted, later deleted, provision would have given the divorce court authority to grant custody to a stepparent, if at least one of three circumstances were present. Those circumstances would have included: (1) where both parents agreed to such a custody decree; (2) where the court found that neither parent was fit to have custody; and (3) in extraordinary cir-

cumstances.

As noted by the Supreme Court of Oregon,

> "the rejection by the legislature of a specific provision contained in an act as originally reported has been held most persuasive to the conclusion that the act should not be so construed as in effect to include that provision, at least, where there is no basis for the assumption that the words omitted are deemed to be surplusage."

*Gilbertson* v. *McLean*, 216 Or. 629, 642, 341 P.2d 139, 145 (1959) (quoting 50 Am. Jur. *Statutes* § 330, at 322); see also *Roberts* v. *Spray*, 71 Ariz. 60, 66, 223 P.2d 808, 812 (1950); *City of Manhattan* v. *Eriksen*, 204 Kan. 150, 154, 460 P.2d 622, 625 (1969); Annot., 70 A.L.R. 5, 22-25 (1931).

To construe 15 V.S.A. § 652(a) as appellant suggests would effectively include that provision which the legislature deleted. That is, if § 652(a) were construed to allow divorce courts to consider the custody of stepchildren, § 652(*f*), now deleted, would, in effect, become part of the final enactment. The legislature *rejected* this portion of the proposed legislation, § 652(*f*), which would have given the divorce court the power to grant custody to a stepparent under certain circumstances, including when neither *parent* is fit to have custody. The legislative rejection of this provision persuades me to conclude that the act should not be construed to give the divorce court the power to consider the custody of stepchildren.

Finally, even if we were unable to garner the legislative intent from the plain meaning of the statute's terms, a comparison of § 652(a)'s predecessor, 15 V.S.A. § 292, with § 652(a) evidences an intent to change the effect of the law.

The predecessor to 15 V.S.A. § 652(a) provided, in pertinent part:

> When a . . . divorce [is] granted, . . . upon petition of either of the parents, the court may make such other or further decree as it deems expedient concerning the care, custody and maintenance of the *minor children of the parties*
> . . . .

15 V.S.A. § 292 (repealed, 1981, No. 247 (Adj. Sess.), § 18) (emphasis added). The legislature repealed § 292 in the same bill in which it enacted § 652(a). 1981, No. 247 (Adj. Sess.).

Where there is a significant change in the terms of a statute covering a particular subject, effect must be given to that change. *In re Cutshaw*, 6 Ariz. App. 330, 432 P.2d 474 (1967); 82 C.J.S. *Statutes* § 370, at 846. The prior law, concerning custody of minor children in divorce actions, granted the divorce court authority to make custody decrees concerning minor children of the parties. Any stepchild would certainly be a child of the *parties*. In the legislature's subsequent enactment, § 652(a), the divorce court is authorized to the consider the minor children of the *marriage*, not the *parties*. This significant change in the language employed evidences an intent to change the law and restrict the scope of the divorce court's authority.

In sum, the language of § 652(a) evinces a legislative intent that divorce courts not consider stepchildren and their custody when considering a divorce petition. Further, even if one finds the language of § 652(a) ambiguous, the legislative history of the enactment indicates an intent consistent with my conclusion.

The majority opinion, in adding conditions and words to the statute, i.e., that if a stepparent stands in loco parentis to a stepchild of the marital household, and if extraordinary circumstances exist, custody may be awarded to a stepparent, is just another example of blatant judicial legislating that a majority of this Court recently has been wont to indulge. *Peck* v. *Counseling Service of Addison County, Inc.*, 146 Vt. 61, 499 A.2d 422 (1985); see *Perry* v. *Superior Court of Kern County*, 108 Cal. App. 3d 480, 485, 166 Cal. Rptr. 583, 586 (Ct. App. 1980). The trial court's denial of the motion to amend is without error.

I am authorized to state that Justice Peck joins in this opinion.