VERMONT SUPERIOR COURT
Orange Unit
5 Court Street
Chelsea VT  05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-03284

| Mary Cahill v. Kimberly Senecal |
| --- |

## ENTRY REGARDING MOTION

Title:       Motion to Dismiss Complaint (Motion: 2)
Filer:       Everett M. Secor
Filed Date:  September 25, 2024

The motion is DENIED.

Defendant Tenant Kimberly Senecal seeks to dismiss the present ejectment action based on Plaintiff Landlord Mary Cahill's alleged non-compliance with the Federal Coronavirus Aid, Relief, and Economic Security Act (CARES Act).  Tenant alleges that the property where she resides is a "covered property" as that term is defined under 15 U.S.C. § 9058(a)(2) and as a result Landlord was required to give her a 30-day notice for termination based on non-payment of rent.  15 U.S.C. § 9058(c).  Since it is undisputed that Landlord did not give such notice, Tenant looks to have the entire complaint dismissed for lack of subject matter jurisdiction.

The Court finds that the property is not covered by Section 9058 for purposes of extending the time required for notice of termination under Section 9058(c), and that along with unresolved factual issues will allow the present matter to continue and proceed to trial or further motion practice.

### Undisputed Facts

Based on the complaint and supplemental information provided by Landlord, the Court adopts the following facts solely for the purposes of the present motion to dismiss.  V.R.C.P. 12(b); *Colby v. Umbrella Inc.*, 2008 VT 20, ¶ 5.

Defendant Senecal is a tenant of Plaintiff Cahill and rents a dwelling unit from her at 25 Vermont Route 14 in East Randolph, Vermont at a rate of $850 per month.  Tenant stopped paying her monthly rent at some prior to August 5, 2024.  On that date, Landlord sent a notice of 14-day

termination notice consistent with 9 V.S.A. § 4467(a). This notice gave Tenant until August 19, 2024, to vacate the dwelling unit. At the time of the letter, Tenant owed Landlord $1,700 in unpaid rent.

Tenant did not pay any rent due and owning on her lease and did not vacate the premises during the notice period. Since August 19th, Tenant has not vacated the dwelling unit but has continued to reside in the unit and has not paid any further rent. Landlord filed the present action seeking ejectment based on non-payment of rent and payment of the unpaid rental amounts at the end of August 2024. Landlord initially omitted her CARES certification with her initial filing, but she has since filed this information and has also provided supplemental information to show that the property and dwelling unit are not subject to any federally backed mortgages or loans. It is also undisputed that Tenant does not receive any vouchers or assistance from the Vermont State Housing Authority or similar entity that is authorized to distribute federal assistance commonly known as Section 8. It is not alleged that Tenant receives any other vouchers or support from any other government assistance program. It is also not alleged that Landlord receives any government assistance or subsidy for either Tenant's lease or Tenant's dwelling unit.

Plaintiff Cahill admitted at the September 30, 2024 rent escrow hearing in this matter that she does have at least one other tenant who receives "section 8 assistance," although it is unknown if such assistance is a tenant-based voucher or a project-based voucher, or even if the tenant resides at the Route 14 property or at another rental property owned by Plaintiff.

## Legal Analysis

The Court will only grant a motion to dismiss if there are no facts or circumstances that would grant plaintiff relief. *Colby*, 2008 VT 20, at ¶ 5. This is because the purpose of a motion to dismiss for failure to state a claim is "to test the law of the claim, not the facts which support it." *Brigham v. State of Vermont*, 2005 VT 105, ¶ 11 (quoting *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002)). Courts rarely grant motions to dismiss for failure to state a claim. *Colby*, 2008 VT 20, at ¶ 5; see also *Kaplan v. Morgan Stanley & Co., Inc.*, 2009 VT 78, ¶ 7.

In this case, Tenant's motion is focused on whether 15 U.S.C. § 9058(c) applies to the present tenancy and requires a longer notice of termination than Landlord provided. Section 9058 is part of what is known as the CARES Act, which was enacted on March 27, 2020 to provide, in part, economic stabilization and assistance to certain sectors of the United States economy during the

coronavirus pandemic and the subsequent recovery. See 15 U.S.C., Ch. 116, part III (Economic Stabilization and Assistance to Severely Distressed Sectors of the United States Economy). One sector of the economy that the CARES Act sought to stabilize in the wake of the Coronavirus was the residential rental sector. To that end, Congress passed a temporary moratorium on certain evictions that lasted from March 27, 2020 through July of 2020. 15 U.S.C. § 9058(b). Congress also passed a law requiring that certain landlords, after the moratorium, had to give tenants a minimum 30-day notice to vacate when the basis of the eviction was non-payment of rent. 15 U.S.C. § 9058(c); see *Housing Authority of County of King v. Knight*, 543 P.3d 891, 902 (Wash. App. 2024) (concluding that Section 9058(c) only applies to non-payment of rent eviction notices).

The limitation on both the temporary moratorium and the 30-day notice requirement is that each only applies to "covered dwellings." This term is defined in Section 9058(a)(1) to include any dwelling that is occupied by a tenant pursuant to a residential lease (or without a lease but terminable under state law) and is on or in a "covered property." 15 U.S.C. § 9058(a)(1). A covered property is defined in Section 9058(a)(2) to include any property that (A) participates in a covered housing program or rural housing voucher program or (B) has a federally backed mortgage loan or federally back multifamily mortgage loan. 15 U.S.C. § 9058(a)(2). The covered housing programs cited in Section 9058(a)(2)(A) reference the list of programs found at 34 U.S.C. § 12491(a), and they include 42 U.S.C. § 1437f, which is the housing voucher program known as Section 8 that is administered by the Vermont State Housing Authority.

When interpreting a statute, "[t]he bedrock rule of statutory construction is to determine and give effect to the intent of the legislature." *In re C.S.*, 158 Vt. 339, 343 (1992). The Court begins this process by looking at the plain language within the context of the statutory scheme. *Delta Psi Fraternity v. City of Burlington*, 2008 VT 129, ¶ 7. If the plain language resolves consistent with the legislation, then the analysis ends. Id. If the plain language produces results that are "manifestly unjust, absurd, unreasonable or unintended, or conflicts with expressions of legislative intent," then the Court must look further. *Town School Dist. of St. Johnsbury v. Town School Dist. of Topsham*, 122 Vt. 268, 271 (1961).

In this case, there is a threshold legal question of federalism that must be resolved before the Court can parse the language of the statute further. Landlord-tenant law is primarily a creature of state law. *Alabama Assoc. of Realtors v. Department of Health and Human Servs.*, 594 U.S. 758, 764 (2021). Thus, any action by the federal government into this area must be done with "exceedingly clear

language" as such provisions "alter the balance between federal and state power." Id. In Vermont, landlords and tenants are governed by the Vermont Residential Rental Act, which has specific provisions for how to terminate a tenancy for non-payment of rent. The provision found at 9 V.S.A. § 4467(a) requires a landlord to give a tenant 14 days of notice before terminating the tenancy. If applicable, 15 U.S.C. § 9058(c) would alter this requirement and would effectively double the amount of time a landlord is required to give. To make such an alteration to state law and practices, there must be a clear authority and Congressional mandate. *Alabama Assoc. of Realtors*, 594 U.S. at763–65 (striking down a federal eviction moratorium where the purpose and authorization were too disparate to support the broad sweep of authority).

In this case, there is some ambiguity as to what Congress meant when it stated that a "covered property" was one that "participates in a covered housing program" like the Section 8 program under 42 U.S.C. § 1437f. This is because Section 8 assistance comes in different forms that involve the property in different manners.

Two of the major Section 8 programs are known as the Section 8 Existing Housing Choice Voucher and the Section 8 Project-Based Voucher. See *Vermont Housing* Authority, *Section 8 Housing Assistance Program* at https://www.vsha.org/vsha-programs/rental-assistance-program/ (last visited Oct. 9, 2024) (explaining the different Section 8 programs that the State administers). Under the Housing Voucher program, it is not clear if the property itself participates in the program. The program is a subsidy that while delivered to the landlord is only a benefit to the tenant as it helps the tenant meet their market-rate rental obligations. Id. In such cases, landlord puts an apartment on the open market for rent at a particular rate. Under the Housing Voucher program, tenant agrees to pay the market-rate rent that was advertised, but the Vermont State Housing Authority agrees to pay a portion of this rental obligation. Id. Landlord receives the same amount of rent that they would have received from a non-subsidized tenant. When the lease ends and the tenant moves to another rental property, they take the voucher and subsidy with them for their benefit. Nothing about this program attaches to the property.

In contrast, the Project-based voucher sets a specific dwelling unit aside as an affordable housing unit. Such units are not listed on the open market. Id. Tenants are selected from a waiting list by Landlord and payment comes from the Housing Authority as negotiated with landlord. The subsidy is attached to the unit—that is the property—and does not go with the tenant. Id.

This issue is a matter of first impression for Vermont courts. Given the differences and distinctions as well as the federalism issue, the Court has looked to other jurisdictions to see if and how they have addressed this analysis. After a survey of available cases, the Court found several decisions where other jurisdictions have sought to interpret the provisions of Section 9058 and its applicability to various landlord/tenant situations. See, e.g., *D.H. v. Common Wealth Apartments*, 231 N.E.3d 284, 287–88 (Ind. App. 2024); *MIMG LXXIV Colonial, LLC v. Ellis*, 6 N.W.3d 799, 804, 805–07 (Neb. 2024) (Papik, J., concurring); *Olentangy Commons Owner LLC v. Fawley*, 228 N.E.3d 621, 632–33 (Ohio App. 2023); *Sherwood Auburn, LLC v. Pinzon*, 521 P.3d 21, 220–21 (Wash. App. 2022). Each of these cases and the near dozen others applying the provisions of 15 U.S.C. § 9058(c) to a termination of tenancy proceeding involve either a landlord receiving a substantial benefit from a federally subsidized mortgage/federal subsidy program, or a tenant who has received a direct subsidy tied to the tenancy at issue in the case. None of the cases involve the type of indirect relationship—applying the provisions of Section 9058 to a tenant residing at the property who is not receiving Section 8 assistance on the sole basis that another tenant is—that is at issue in the present matter and motion. Thus, while the Court can find several cases interpreting and applying the 30-day notice provision of Section 9058(c), it cannot find a single case where a court has extended the provision in the manner that Tenant seeks.

Looking to the federal agency that is charged with implementing Section 9058 and the other provisions of the CARES Act, the Court sees that this distinction is necessarily chance but is a reflect of federal policy and interpretation. In its sole guidance on the issue, the Department of Housing and Urban Development provides the following interpretation of Section 9058 and its applicability to non-subsidized tenants who seek to apply the CARES Act to their eviction:

> If the market rate property has a federally backed mortgage, then Section 4024 of the CARES Act applies to the entire property. If the market rate property does not have a federally backed mortgage, then Section 4024 of **the CARES Act only applies to the voucher holder. HUD does not have the authority to extend jurisdiction over unassisted tenants** or the property that does not have a federal backed mortgage. However, owners should review their state and local laws, as many are also enacting their own moratorium on evictions.

*Dep't of Housing and Urban Dev.*, *HUD COVID-19 FAQs for Public Housing Agencies* at 9 at https://www.hud.gov/sites/dfiles/PIH/documents/COVID19_Round3-FAQs_04-22-20.pdf (Apr. 22, 2020) (emphasis added).

The Court finds this interpretation to be persuasive and worthy of adoption for the following reasons. First, it comes from the Agency charged with implementing and interpreting the provisions of Section 9058 and with administrating the public funding programs. Second, the opinion recognizes that while Section 9058 has broad language, the federal mandate is limited and constrained by the authority of the federal government to intercede into areas of state law. This reasoning is given the fullest available expression by Nebraska Supreme Court Justice Papik in his concurrence in the *MIMG LXXIV Colonial, LLC* where he notes that:

> If the federalism canon were applied, the relevant question would not be whether the text of 15 U.S.C. § 9058 is best read to create a permanent federal 30-day notice requirement for evictions from covered properties. Rather, the question would be whether an interpretation that avoids or minimizes federal regulation of a subject traditionally left to the states is at least tenable, such that the more expansive interpretation cannot be described as clear. As Justice Barrett observed in a recent concurring opinion, the federalism canon is a "strong-form canon," and such canons ask courts to "*strain* statutory text to advance a particular value." *Biden v. Nebraska*, 600 U.S. 477, 508, 143 S. Ct. 2355, 216 L. Ed. 2d 1063 (2023) (Barrett, J., concurring) (emphasis in original). As a result, Justice Barrett explained that when a clear-statement interpretive rule applies, "the better interpretation of a statute will not necessarily prevail," id., and if the "better reading leads to a disfavored result ... the court will adopt an inferior-but-tenable reading to avoid it," id., 600 U.S. at 509, 143 S.Ct. 2355. See, also, *Rudisill v. McDonough*, 601 U.S. 294, 315, 144 S. Ct. 945, —— L.Ed.2d —— (2024) (Kavanaugh, J., concurring) ("[a]pplying a substantive canon, a court may depart from what the court, absent the canon, would have concluded is the best reading of the statutory text. Otherwise, of course, the substantive canon would not be necessary or relevant").

*MIMG LXXIV Colonial, LLC v. Ellis*, 6 N.W.3d at 806.

While the Court does not adopt the federalism cannon in this case, the discussion, nevertheless, embodies the Court's concerns about Tenant's broader interpretation of Section 9058. Given the weak connection between any federal money and the activity sought to be regulated, any interpretation that sits at the outer edges of Section 9058—such as Tenant's interpretation, which would allow a tenant to claim the benefit of a federal statute despite no nexus between the federal funds and the tenant, the unit they were renting, the lease agreement, or even the property— would likely exceed the federal government's authority to alter existing state landlord-tenant laws. The HUD interpretation of Section 9058's mandate, which excludes situations where the only federal nexus is a separate and unrelated tenant receiving a housing voucher, is the only sensible reading of

the statute that would avoid this constitutional issue. *State v. Berard*, 2019 VT 65, ¶ 16 (noting that Vermont courts "generally construe statutes to avoid constitutional difficulties if possible.").

Third, the HUD interpretation also accounts for the issues of jurisdiction and notice. If the Court was to extend the provisions of the CARES Act to parties not directly involved with the receipt of federal funds, there would be a substantial question what notice parties would have as to when the federal jurisdiction applied. By way of example, if the Section 8 tenant leaves before the landlord gives notice to the non-Section 8 tenant, would 15 U.S.C. § 9058(c) still apply? What about the opposite circumstance where the Section 8 tenant moves in after the non-Section 8 tenant forms their rental agreement and relationship under Vermont law? Do the rights accrue to the non-Section 8 tenant despite the parties' prior agreement and relationship? What if the move-in of the Section 8 tenant occurs after the notice of termination but before the ejectment action? Beyond the practical jurisdictional dilemmas in these scenarios, each carries a question of notice. How does a tenant learn that these rights accrue? How does the Landlord? In all other cases with the CARES Act, there is a moment where either landlord or landlord and tenant sign an agreement with HUD or its state proxy and accrue a benefit that puts them on notice.[1]

According to the HUD such guidance and notifications will not be given to landlords for their non-Section 8 tenants. See *Dep't of Housing and Urban Dev.*, 30-Day Notification Requirement Prior to Termination of Lease for Nonpayment of Rent, 88 Fed. Reg. 83877-02 (Dec. 1, 2023) (detailing the HUD's proposed rules for applicability of the CARES Act to only project-based rental assistance tenants for evictions based on non-payment of rent). To the extent that this Court allowed Tenant's interpretation to prevail, it would create a situation that would run counter to any intent to notify and require the parties and would effectively impose a requirement that was not covered by the agency implementing notice and general enforcement. Id. at 83882. Given that there is no clear line of notice either naturally occurring within the landlord/tenant relationship or planned by the HUD's current rulemaking, Tenant's proposed interpretation creates a problem of notice and jurisdiction. The HUD interpretation does not.

For these reasons, the Court finds the HUD interpretation of the scope and reach of 15 U.S.C. § 9058 to be the more persuasive and compelling interpretation for purposes of

---

[1] Such subsidy or mortgage agreements also reference contain language invoking the various statutes such as 15 U.S.C. § 9058 that serve as another, likely form of notice.

implementing the purpose of the CARES Act and applying the federal modifications to state landlord/tenant law in a clear and delineated manner that is consistent with the federal intent and supported by federal agencies. The Court adopts this interpretation, which effectively resolves Tenant's Motion to Dismiss as a matter of law. Based on this interpretation, Landlord in the present case was not obligated to provide additional notice to Tenant under 15 U.S.C. § 9058(c), and the notice provided is consistent with state law under 9 V.S.A. § 4467(a).

Returning to the factual issues that the Court set aside earlier, the facts of this case have not been fully developed. While Landlord mentioned another tenant receiving Section 8 housing, there has been no pleading or sufficient record to understand the nature of this tenant's subsidy or what Landlord has or has not agreed to receive. Therefore, in addition to the legal considerations analyzed above, the record is not sufficient for the Court to rule as a matter of law on the factual bases that Tenant relies upon in her responsive filing.

## ORDER

Based on these considerations, Tenant's Motion to Dismiss is **Denied.** This denial is based on the legal limitations that render 15 U.S.C. § 9058(c) inapplicable to the current Landlord and Tenant and their lease relationship as presently understood by the Court under V.R.C.P. 12(b). This denial is also based on the lack of facts sufficient to demonstrate the precise nature of the relationship between Landlord and the other tenant, including the tenant's location, subsidy status, and relevant dates when their lease relationship began.

In light of this dismissal and Landlord's compliance with the CARES Act notification, the Rent Escrow Order and all deadlines associated with that Order remain in place. Tenant has 14 days from the date of this Order to file her answer as required under V.R.C.P. 12.

Electronically signed on 10/9/2024 11:38 PM pursuant to V.R.E.F. 9(d)

Vermont Superior Court
Filed 10/16/24
Orange Unit

_____
Daniel Richardson
Superior Court Judge